R. L. SMITH AND WIFE, NELLIE SMITH; E. B. SMITH AND WIFE, ORA LEE SMITH; C. A. SMITH AND WIFE, CONNIE SMITH; PHOEBE BLAIR PARKER AND HUSBAND, C. M. PARKER; M. E. SMITH AND WIFE, LORENE SMITH; AND JESSIE SMITH (UNMARRIED), HEIRS AT LAW OF CORNELIUS A. SMITH, v. R. T. JOYCE.

(Filed 4 January, 1939.)

1. **Frauds, Statute of, § 2a—Sufficiency of memorandum to take contract of sale of realty out of statute of frauds.**

Although a memorandum sufficient to take a contract of sale of realty out of the statute of frauds need not be formal and may consist of several papers properly connected together, it must embody the terms of the contract, the names of the parties, and a description of the land to be conveyed, at least with sufficient definiteness to be aided by parol. C. S., 988.

2. **Same—Writings relied on held insufficient memoranda to take case out of statute of frauds.**

Plaintiffs instituted this action to recover the purchase price of lands alleged to have been bid off by defendant at an auction sale. Defendant pleaded the statute of frauds. C. S., 988. Plaintiff introduced in evidence the printed advertisement of sale, locating the land as lying between three cities, and stating it had been divided in three tracts; writing on the back of one of the advertisements signed by the auctioneer stating "tract No. 3," the number of acres, the price per acre, and defendant's name; writing on another separate piece of paper stating "tract No. 3 . . . bought by" defendant, and the number of acres and price per acre; and writing on a third separate piece of paper stating the names of the parties; and deed to defendant for the third tract, prepared sometime after the sale. *Held:* None of the separate writings contained internal reference to other papers so as to properly connect them therewith, and neither the printed advertisement nor the writing on the back thereof contained any sufficient description of the land, and the deed, later prepared, was not connected with, contained no reference

to, and was not referred to in, any other of the papers, and the memoranda are insufficient to show the essential elements of a contract so as to take the case out of the statute of frauds.

**3. Frauds, Statute of, § 2b—**

An auctioneer's authority to sign a memorandum of sale as agent of the purchaser is ordinarily limited to the time of sale, and his signature for the purchaser two or three days after the sale and after the purchaser had repudiated the sale, does not bind the purchaser.

**4. Same—**

An attorney for the vendors at an auction sale, who is not employed by the auctioneer nor requested by him to act, but who is present, voluntarily gathering memoranda for use in preparing deeds, is not in law an agent of the purchaser for the purpose of signing a memorandum of sale.

APPEAL by defendant from *Harding, J.,* at March Term, 1938, of FORSYTH. Reversed.

This action was instituted in the Forsyth county court to recover the purchase price of land alleged to have been bid off by the defendant at an auction sale. Among other defenses the defendant pleaded the statute of frauds.

From judgment on the verdict in favor of plaintiffs, defendant appealed to the Superior Court and, from judgment in the Superior Court overruling his assignments of error and affirming the judgment of the county court, the defendant appealed to the Supreme Court.

*Elledge & Wells for plaintiffs, appellees.*

*Hastings & Booe, Fred Morris, and Peyton B. Abbott for defendant, appellant.*

DEVIN, J.. The appellant's principal assignment of error relates to the denial of his motion for judgment of nonsuit duly entered in the trial court. Having preserved his exception on appeal to the Superior Court, he now presents that question for decision by this Court. The motion for judgment of nonsuit was interposed on the ground that the plaintiffs' evidence failed to show a valid contract for the purchase of the land enforceable under the statute of frauds upon which specific performance could be decreed.

The statute of frauds (29 Ch. II, c. 3), as adopted in this State and brought forward in section 988 of the Consolidated Statutes, provides that all contracts to sell or convey land shall be void "unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized."

The evidence relied upon by the plaintiffs as constituting a sufficient memorandum under the statute consisted of several paper writings:

(1) Printed advertisement of sale by the heirs of C. A. Smith of land "located in the triangle between Winston-Salem, Greensboro and High Point. The heirs have divided this valuable land into three tracts and will offer same for sale on Saturday, October 17th, at 2 o'clock P. M. The home tract contains 64.59 acres and a large dwelling house. Another tract contains 56.22 acres with dwelling and out-buildings. Another tract contains 56.42 acres. Terms, 5% cash on day of sale and balance on delivery of deed." The advertisement contained no other description of these several tracts. (2) Deed from the Smith heirs to R. T. Joyce for the third tract, 56.22 acres, described by metes and bounds, and duly acknowledged. This deed was prepared some time after the sale for the purpose of tender to the defendant before suit. (3) Writing on the back of the printed notice of sale, "tract #3, 56.22 acres, $55.00 per acre. R. T. Joice. Oct. 17, 1936. W. A. Smith, Auctioneer." (4) Writing on a separate sheet of paper, "Tract #3, or Clint Smith tract. Bought by R. T. Joyce at $55.00 per acre. 56.22 acres." (5) Writing on another separate sheet of paper, "R. L. Smith and others (the plaintiffs herein) to R. T. Joyce, tract #3."

In order to constitute an enforceable contract within the statute of frauds, the written memorandum, though it may be informal, must be sufficiently definite to show the essential elements of a valid contract. It must embody the terms of the contract, names of vendor and vendee, and a description of the land to be conveyed, at least sufficiently definite to be aided by parol. *Gwathmey v. Cason,* 74 N. C., 5; *Hall v. Misenheimer,* 137 N. C., 183, 49 S. E., 104; *Timber Co. v. Yarborough,* 179 N. C., 335, 102 S. E., 630; *Keilh v. Bailey,* 185 N. C., 262, 116 S. E., 729. The memorandum need not be contained in a single document but may consist of several papers properly connected together. As was said in *Mayer v. Adrian,* 77 N. C., 83: "It (the memorandum) may be one or many pieces of paper, provided the several pieces are so connected physically or by internal reference that there can be no uncertainty as to their meaning and effect when taken together. But this connection cannot be shown by extrinsic evidence." *Simpson v. Lumber Co.,* 193 N. C., 454, 137 S. E., 311.

It is apparent that the separate papers offered by the plaintiffs as a compliance with the requirements of the statute are insufficient for that purpose. Neither the printed advertisement of sale nor the writing on the back thereof contains any description of the land, for the purchase of which the defendant is sought to be charged. No map was attached to or connected therewith or referred to therein. The other separate sheets of paper are not in themselves sufficient to show the essential elements of a contract. They were not physically connected, nor do they contain internal reference to other writings, so as to constitute a

valid and sufficient memorandum within the meaning of the statute as interpreted by this Court in the decisions cited. The deed, subsequently prepared and tendered before the institution of the action, was not connected with, nor did it refer to or contain reference to any other paper in evidence.

"In order to charge a party upon such a contract (to purchase land), it must appear that there is a writing containing expressly or by implication all the material terms of the alleged agreement which has been signed by the party to be charged or by his agent lawfully authorized." *Keith v. Bailey, supra; Burriss v. Starr,* 165 N. C., 657, 81 S. E., 929; 25 R. C. L., 680.

In *Ringer v. Holtzclaw,* 112 Mo., 522, it is said: "All the authorities are agreed that the memorandum must state the contract with reasonable certainty so that its essential terms can be ascertained from the writing itself without resort to parol evidence."

The papers offered as constituting a written memorandum of the contract necessary to its validity, must be held insufficient for that purpose on the further ground that they are not signed by the defendant or by any other person "by him thereto lawfully authorized."

While admitting there is no evidence that the defendant personally signed any of the papers offered in evidence in connection with the alleged contract of purchase, or that he expressly authorized any other person to do so for him, the plaintiffs contend that upon the principle of constructive or implied agency the defendant is bound by the fact that the auctioneer at the sale wrote defendant's name, in connection with the recital of number of acres and price per acre, on the back of the printed advertisement of the sale.

The law seems to be well settled that the auctioneer at a sale is, at the time and for that purpose, the agent of both seller and buyer, and that when the auctioneer writes down at the time the name of the buyer on the paper writing showing the price bid for property therein described, it is a sufficient memorandum within the meaning of the statute of frauds upon which payment of the purchase price may be enforced. *Cherry v. Long,* 61 N. C., 466; *Gwathmey v. Cason,* 74 N. C., 5; *Proctor v. Finley,* 119 N. C., 536, 26 S. E., 128; *Love v. Harris,* 156 N. C., 88, 72 S. E., 150; *Flowe v. Hartwick,* 167 N. C., 448, 83 S. E., 841; *Woodruff v. Trust Co.,* 173 N. C., 546, 92 S. E., 496.

But the facts here do not warrant the application of the principle stated in the cited cases. Here the auctioneer testified: "I signed the memorandum (written on the back of the printed advertisement of sale) two or three days after the sale." As this witness' own signature appears on this paper, it is not clear whether he referred to writing his own name on the paper or that of the defendant. But assuming that

the auctioneer wrote the name "R. T. Joice" on the paper writing referred to, the plaintiffs' evidence showed this was done several days after the sale, and that in the meantime the defendant, on the morning following the sale, had repudiated the purchase, on the ground of misrepresentation of the character of the tract of land on which he had bid, and had notified the sellers that he declined to complete the purchase.   After notice of defendant's repudiation of the bid, and two or three days after the sale, one of the plaintiffs took the quoted memorandum written on the back of the advertisement to the auctioneer, and the latter signed it then and dated it back to the day of sale.

Upon this evidence we are unable to hold that the constructive agency of the auctioneer continued two or three days after the sale, and after notice of the withdrawal of defendant's offer to purchase.   The agency of the auctioneer, implied by law for the purpose of the sale only, and uncoupled with an interest, had terminated and had been revoked before the defendant's name was written on the paper offered in evidence.

The act of an agent after the termination of an agency for a particular purpose and notice of the revocation of his agency, is ordinarily not binding on the principal, unless the facts afford the basis for the application of some other principle of law not presently presented.   2 Am. Jur., 50; 2 C. J. S., 1152; 21 R. C. L., 822.   Here the auctioneer could only be considered in law the agent of the purchaser at the time and for the purpose of the sale, and his agency could not be extended beyond a reasonable time for the completion of that particular act, nor after notice to him and to the seller of the withdrawal of the offer of purchase.   While not deciding the question, it was said in *Gwathmey v. Cason,* 74 N. C., 5: "There are decided authorities that the signature (by the auctioneer) must be strictly contemporaneous with the sale."

In 5 Am. Jur., 467, it is said: "The majority of the courts which have passed on the subject hold or assume that between the fall of the hammer and the signing of the memorandum, the auctioneer's authority to sign a memorandum may be revoked by either the seller or the purchaser."

"The law, therefore, when it allows him (the auctioneer) to act in the nearly unprecedented relation of agent for both parties, imposes a qualification not applied to the usual cases of agency, and requires that the single act which, almost from necessity, he is authorized to perform for the buyer, shall be done at the time of the sale, and before the termination of the proceedings."   *Horton v. McCarty,* 53 Me., 394.

"The dual character of his agency ceases at that time and an entry by him in his sales book at a subsequent period does not bind the purchaser."   5 Am. Jur., 468.   "An auctioneer's agency for the purchaser ends with the sale, while that for the seller may continue thereafter."

7 C. J. S., 1249. "The power of the auctioneer and of his clerk to sign a memorandum may be revoked by a buyer or seller at any time before the power is exercised." Am. Law Inst., Restatement Contracts, sec. 212 (2).

In *White v. Dahlquist Mfg. Co.,* 179 Mass., 427, it was said: "While the power of the auctioneer to strike the bargain imports authority to make his work effectual by signing the memorandum necessary to bind the parties, it also implies that the act shall be substantially contemporaneous with the sale and as a part of it. In such a case the agency of the auctioneer is substantially ended with the auction, and his authority to bind either party by a memorandum would not extend beyond that time. Such an authority must be exercised contemporaneously with the sale."

In the annotations under *Love v. Harris, supra,* reported in American Annotated cases 1912 D, at page 1065, numerous cases are cited in support of the statement that "the implied authority of the auctioneer to sign the name of the purchaser extends only to a signing at the time of the sale."

From 25 R. C. L., 604, we quote: "The rule that the memorandum must be made contemporaneously with the sale is undoubtedly the rule when its sufficiency to bind the purchaser is involved," and in *Dunham v. Hartman,* 153 Mo., 625, it was said: "If there was an implied agency, that agency was revoked by the defendant's (buyer's) repudiation of the transaction. Certainly, the agent could not act in spite of his principal, and do for him what he refused to do for himself."

Nor is plaintiffs' case helped by the fact that on a separate sheet of paper were written the words, "tract #3—or Clint Smith tract. Bought by R. T. Joyce at $55.00 per acre—56.22 acres." The evidence shows these words were written by the witness James W. Manuel. The plaintiffs, however, urge the view that Manuel was the auctioneer's clerk and that by virtue of his relation to the auctioneer the same rule applies to him as the auctioneer (citing *Cherry v. Long,* 61 N. C., 466), and that in this instance the writing was done at the time of the sale.

In the case cited, *Cherry v. Long, supra,* the facts are stated in the opinion by *Pearson, C. J.,* as follows: "At a public sale of land a tract is bid off by the defendant; the auctioneer says, 'Put it down to James S. Long,' whereupon the clerk enters on his sale list in the presence of Long, 'Rayner tract to James S. Long at $40 per acre.'" In that case, the other elements of the contract sufficiently appearing in the memorandum, it was held that the evidence was sufficient to show a compliance with the statute.

Here, however, the evidence does not support plaintiffs' contention based on the *Cherry case.* The auctioneer testified he did not have any-

thing to do with employing Mr. Manuel, though he knew he was keeping a record of the sales. Mr. Manuel, who is an attorney at law, testified that he had no request or suggestion from the auctioneer or the plaintiffs that he act as clerk, and that his doing so was a voluntary act on his part, and that he was employed to prepare the deeds. He testified: "I was there at the sale as attorney for the Smith heirs, having been employed theretofore in preparing the advertisement, and that is the reason I was there. I was there representing just the heirs and nobody else."

Unquestionably, Mr. Manuel was not employed or requested to act by the auctioneer, and was merely present as attorney for the plaintiffs, making memoranda and gathering data in that capacity for the purpose of drawing the deeds. It appears that the other separate sheet of paper contained only the names of the parties, and that the undelivered deed was written by Manuel some time after the sale.

Upon this evidence we cannot hold that, when the witness Manuel, the attorney for the plaintiffs, wrote the name of R. T. Joyce on the separate sheet of paper in connection with the reference to 56.22 acres and the price per acre, he was in law the agent of the defendant, and that this constituted the signing of a memorandum by one "lawfully authorized" to act for the defendant, within the meaning of the statute. *Howell v. Shewell,* 96 Ga., 454; *Burton v. Jones,* 147 Tenn., 624; 28 A. L. R., 1111.

It follows that the plaintiffs have failed to offer evidence of the execution by the defendant of a written memorandum of the contract to purchase the land in accordance with the requirements of the statute, sufficient to warrant submission of the case to the jury, and that defendant's motion for judgment of nonsuit should have been allowed.

The judgment of the Superior Court overruling defendant's assignment of error and affirming the judgment of the Forsyth county court must be reversed, and the cause remanded for entry of judgment in accord with this opinion.

Reversed.