SYBIL T. HINES AND HUSBAND, HARRY HINES v. O. Z. TRIPP AND WIFE, GRACIE ANNIE TRIPP.

(Filed 15 January, 1965.)

**1. Frauds, Statute of § 3—**

A denial of the alleged contract is equivalent to a plea of the applicable statute of frauds. G.S. 22-2.

**2. Same—**

Upon defendant's plea of the statute of frauds plaintiff has the burden of showing a written agreement or some memorandum or note thereof signed by the party to be charged or by some person by him thereto lawfully authorized.

**3. Frauds, Statute of § 2—**

The statute of frauds does not require that all the provisions of the agreement to be set out in a single instrument, but the memorandum is sufficient if the contract provisions can be determined from separate but related writings.

HINES *v.* TRIPP.

**4. Same—**

> The statute of frauds permits an agent to bind his principal by signing the memorandum.

**5. Same—**

> In this action to enforce a contract to reconvey land theretofore conveyed by plaintiffs to defendants for the purpose of securing a loan to pay off a prior mortgage executed by plaintiffs to other parties, a letter signed by plaintiffs' attorney requesting execution of the deed in accordance with the contract between the parties with a letter of defendants' attorney acknowledging the contract, and the attorney's draft of the contract for defendants' signatures, together with corroborative parol testimony, *held* competent for the purpose of showing signature of a sufficient memorandum by defendants' agent.

PLAINTIFFS appeal from a judgment of nonsuit rendered by *Braswell, J.,* at the April 1964 Civil Session of BRUNSWICK.

Plaintiffs seek specific performance of an alleged contract giving them the option to purchase a tract of land in Brunswick County. They allege a demand, and defendants' refusal to comply with their contract.

Defendants denied the alleged contract.

*Kirby Sullivan and David M. Blackwell for plaintiff appellants.*
*Herring, Walton, Parker & Powell for defendant appellees.*

RODMAN, J. Plaintiffs' assignments of error are directed to rulings excluding evidence offered for the purpose of establishing the alleged contract.

Defendants' denial of the alleged contract is equivalent to a plea of the statute of frauds, G.S. 22-2. *Hunt v. Hunt,* 261 N.C. 437, 135 S.E. 2d 195; *Pickelsimer v.. Pickelsimer,* 257 N.C. 696, 127 S.E. 2d 557; *McCraw v. Llewellyn,* 256 N.C. 213, 123 S.E. 2d 575; *Humphrey v. Faison,* 247 N.C. 127, 100 S.E. 2d 524; *Jamerson v. Logan,* 228 N.C. 540, 46 S.E. 2d 561.

To bind defendants, plaintiffs had the burden of showing a written contract, "or some memorandum or note thereof * * * signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized."

Plaintiffs do not claim that they have a writing signed by defendants *in propria persona.* To establish the contract, they rely on: (1) A letter, dated February 2, 1963, from their attorney, Kirby Sullivan, to defendants; (2) the reply thereto, written by E. J. Prevatte, alleged to be the agent and attorney for defendants; (3) parol testimony by

Prevatte and others to corroborate the statements in Prevatte's reply to Sullivan's letter; and (4) Prevatte's draft of the contract prepared for signature of defendants.

Plaintiffs' evidence is sufficient to establish these facts: *Feme* plaintiff and male defendant are brother and sister, children of J. W. Tripp and wife. The other children of J. W. Tripp and wife were Olive Stanley, Ella Mae Beck, Estelle Carlisle and Leon Tripp. Male plaintiff and *feme* defendant are brother and sister.

By deed, dated 28 February 1951, recorded in Book 102, page 368, J. W. Tripp and wife conveyed to *feme* plaintiff a tract of land described by metes and bounds, recited to contain "57.6 acres as surveyed by E. M. Eutsler, *c.e.*, as appears of record in Map Book 3, at page 45, in the office of the Register of Deeds for Brunswick County, North Carolina." The specific description given in that deed omits six of the calls shown on the Eutsler map recorded in Book 3, page 45. If the calls for course and distance given in that deed are controlling, the acreage conveyed would be less than 57 acres. The land described in the foregoing deed was the homeplace of plaintiffs. They had mortgaged this land prior to 1960 to secure debts owing by them. In 1960, the mortgagee threatened to foreclose. Male defendant offered to assist plaintiffs in saving their home. He and plaintiffs went to the office of E. J. Prevatte, an attorney residing in Southport. Male defendant informed Mr. Prevatte of his desire to help his sister save her home. To accomplish that purpose, he proposed to borrow enough to pay the debt secured by the subsisting mortgage. To secure the moneys he borrowed, he would mortgage plaintiffs' property. This would require a conveyance by plaintiffs to defendants. Defendants would, after the execution of the mortgage, give plaintiffs an option by which they could, at any time within five years, compel a reconveyance. The amount to be paid for the reconveyance would be the amount defendants had invested, plus interest at 6 per cent; additionally, defendants would have the first right to re-purchase if plaintiffs should desire to sell at any time within five years subsequent to the exercise of their option.

Prevatte, when examing plaintiffs' title preliminary to the preparation of the mortgage to be executed by defendants, discovered the omission of the six calls in the deed to plaintiffs. He declined to certify good title to the 57 acres unless the other heirs of J. W. Tripp and wife would release their interest in the land, so that the mortgage to be executed by defendants would convey good title to the entire 57 acres. For that purpose, plaintiff, her brother and sisters, executed a quitclaim deed conveying to defendants the land not covered by the specific description in the deed to plaintiffs. Prevatte also prepared a deed from

plaintiffs to defendants and a contract for execution by defendants Tripp, giving plaintiffs the option to re-purchase at any time within five years. These papers were all transmitted by Prevatte to defendants.

The two deeds to defendants were executed in March 1960. Defendants executed a mortgage securing payment of the moneys borrowed to discharge plaintiffs' indebtedness. The mortgage given by plaintiffs was canceled. Defendants did not sign the option prepared by Prevatte, or, if they signed the same, they did not deliver a copy to plaintiffs. Plaintiffs inquired of Prevatte as to the written option to be executed by defendants. Prevatte explained he had sent the contract to defendants for execution and delivery to plaintiffs.

At plaintiffs' request, Prevatte re-drafted the option for execution by defendants. He delivered the new drafts to plaintiffs. They requested defendants to sign. The request was ignored. Plaintiffs then offered to pay the option price, and demanded a reconveyance. This demand was ignored. Early in 1963, plaintiffs employed Kirby Sullivan, an attorney residing in Southport. Sullivan, on February 2, 1963, wrote plaintiffs as follows:

> "Mr. & Mrs. Harry Hines are ready to re-purchase from you under the terms of their contract with you, the tract of land in Shallotte Township, Brunswick County, North Carolina, containing 57.6 acres as per survey by E. M. Eutsler, c.e., as appears of record in Map Book 3, page 45, in the office of the Register of Deeds of Brunswick County, North Carolina. Please let me know when you will have ready the deed to them so that this matter can be closed out at once."

On February 7, 1963, Mr. Prevatte addressed a letter to Mr. Sullivan. He said:

> "Mr. and Mrs. O. Z. Tripp came to see me yesterday with reference to your letter to them of 2 February, 1963, in behalf of Mr. and Mrs. Harry Hines. They asked that I reply in kind for them. * * * The original agreement between Mr. and Mrs. Hines and Mr. and Mrs. Tripp provided for a re-conveyance of the property within five years from the date of the conveyance from Mr. and Mrs. Hines to Mr. and Mrs. Tripp. The agreement provided that Mr. and Mrs. Hines should pay to Mr. and Mrs. Tripp the same amount of money that Mr.. and Mrs. Tripp paid for the property with interest at the rate of 6 per cent, plus improvements. Mr. and Mrs. Tripp do not deny this agreement. * * * The diffi-

culty in activating the agreement now is the fact that they have waited too late in this crop season, and Mr. and Mrs. Tripp have proceeded to such an investment on the present crop that they cannot now agree to anything. It goes without saying that at the end of the crop year, if your clients are interested in implementing the agreement, I shall be happy to discuss the matter with you at that time, to the end that we may resolve the matter."

The letters from Sullivan, agent for plaintiffs, to defendants and the reply of Prevatte, agent for defendants, were a sufficient memorandum to meet the requirements of G.S. 22-2. *Lane v. Coe,* 262 N.C. 8, 136 S.E. 2d 269; *Smith v. Joyce,* 214 N.C. 602, 200 S.E. 431; *Keith v. Bailey,* 185 N.C. 262, 116 S.E. 729; *Lewis v. Murray,* 177 N.C. 17, 97 S.E. 750; *Hall v. Misenheimer,* 137 N.C. 183, 49 S.E. 104; *Hargrove v. Adcock,* 111 N.C. 166, 16 S.E. 16; *MaGee v. Blankenship,* 95 N.C. 563; 49 Am. Jur. 663-4.

The statute does not require all of the provisions of the contract to be set out in a single instrument. The memorandum required by the statute is sufficient if the contract provisions can be determined from separate but related writings. *Smith v. Joyce, supra; Simpson v. Lumber Co.,* 193 N.C. 454, 137 S.E. 311; *Nicholson v. Dover,* 145 N.C. 18, 58 S.E. 444; 49 Am. Jur. 697.

The statute, by express language, permits an agent to bind his principal. The agent may do so by signing his name. *Lewis v. Allred,* 249 N.C. 486, 106 S.E. 2d 689; *McCall v. Institute,* 187 N.C. 757, 122 S.E. 850; *Hall v. Misenheimer,* 137 N.C. 183, *supra; Hargrove v. Adcock, supra.*

The court erred in excluding the proffered evidence. It was sufficient to require jury determination of the controverted issues.

The judgment of nonsuit is

Reversed.