51 B.R. 869 (1985)
In re Raymond Arthur LAUGHINGHOUSE, Catherine D. Laughinghouse, Debtors.
Richard M. STEARNS, Trustee, Plaintiff,
v.
Robert H. WOOLARD, and wife, Doris B. Woolard, Defendants.
Richard M. STEARNS, Trustee, Plaintiff,
v.
Gene Aubrey SPEAR, and wife, Lois Hoell Spear, Defendants.
Bankruptcy No. S-84-00338-4, Adv. Nos. S-85-0093-AP, S-85-0094-AP.
United States Bankruptcy Court, E.D. North Carolina.
August 2, 1985.
*870 Ernest C. Richardson, III, New Bern, N.C., for defendants Woolard.
Michael P. Flanagan, New Bern, N.C., for defendants Spear.
Richard M. Stearns, Kinston, N.C., for trustee.

MEMORANDUM OPINION
A. THOMAS SMALL, Bankruptcy Judge.
The matters before the court are two adversary proceedings brought by Richard M. Stearns, trustee for the chapter 7 debtors, to compel the high bidders at a public auction to honor their bids and purchase certain tracts of real property. The adversary proceedings involve common questions of law and fact, and were consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure (BR 7042) for joint trial. The trial was held in Raleigh, North Carolina, on July 23, 1985.
These adversary proceedings are "core proceedings" (28 U.S.C. § 157(b)(2)(A), (N), and (O)) which this bankruptcy court may hear and determine. 28 U.S.C. §§ 1334, 151, 157, and the general order of reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

*871 FACTS
Raymond Arthur Laughinghouse and Catherine D. Laughinghouse filed a voluntary chapter 11 petition on February 28, 1984. Their chapter 11 case was converted to a case under chapter 7 on July 17, 1984, and Richard M. Stearns was appointed trustee.
On August 31, 1984, an order was entered, upon the petition of the trustee, appointing Doug Gurkins of Country Boy Auction Company as auctioneer to sell property of the estate.
The trustee gave notice to all creditors on October 2, 1984, of a public sale of real and personal property of the estate to be held on November 9, 1984. No objections to the sale were filed.
The trustee obtained the consent of holders of various liens encumbering the real property to be sold, and on October 5, 1984, the court entered consent orders authorizing the sale of the real property free of the liens of Edward Carl Hellen and Janet M. Hellen,[1] Branch Banking & Trust Company, and Wachovia Bank & Trust Company. On November 16, 1984, a week after the sale, a consent order was entered authorizing the sale free of the lien of the Federal Land Bank. The trustee apparently could not get the consent of Warren Brothers Equipment Co., and a motion to sell property free and clear of lien with respect to Warren Brothers Equipment Co.'s judgment lien was filed by the trustee on November 1, 1984; when no response to the motion was received, the court, on December 5, 1984, entered an order authorizing a sale free of the judgment lien of Warren Brothers Equipment Co.
Mr. Gurkins, the auctioneer, placed the following advertisement in several newspapers: *872 
The sale was held as advertised on November 9, 1984.
There is some disagreement as to what announcements were made at the sale. Mr. Gurkins indicated that he made a tape recording of the sale, but the tape was misplaced. The court finds that the announcement made by Mr. Gurkins at the beginning of the sale was that the property was being sold "free and clear of liens and encumbrances, with the exception of 1984 ad valorem taxes, pursuant to order of the bankruptcy court." Both Mr. and Mrs. Woolard and Mr. Spear believed that if they were the high bidders, they would be buying the property free and clear of all liens and encumbrances except the 1984 ad valorem taxes.
Mr. and Mrs. Woolard were the high bidders at $30,000 on "Tract 3" containing approximately 13.5 acres (see Woolard Answer ¶ 7). The Woolards paid the required $3,000 deposit, being 10% of the purchase price, as required by the terms of sale.
*873 Mr. Spear was the high bidder at $25,000 on "Tract 4" containing approximately 35.68 acres (see Spear Answer ¶ 4). Mr. Spear paid the required $2,550 deposit, being 10% of the purchase price, as required by the terms of the sale.
Neither Mr. and Mrs. Woolard nor Mr. Spear signed any written document agreeing to purchase the real property. There is no evidence that Mrs. Spear agreed to purchase the property.
Mr. Gurkins did not file an itemized statement of the property sold, but on December 7, 1984, the trustee filed a "Report of Sale" which listed the names of the buyers, the items purchased, and the amounts of each high bid. The trustee's report reflects that "Gene & Lois Spear" purchased 35 acres for $25,500, and that "Robert Woolard and Doris Burton" purchased 13 acres for $30,000.
The trustee filed a petition on December 7, 1984, asking that this court approve the sales; an order approving the sales was entered on December 14, 1984.[2] Both Mr. and Mrs. Woolard and Mr. Spear refused and continue to refuse to close the transaction because, they contend, the property is owned by Catherine Enterprises, Inc., not the debtors, and because the property is subject to liens and encumbrances, i.e., a life estate, and a ten year lease.
At the time the debtors filed their bankruptcy petition, title to the real property was in the name of Catherine Enterprises, Inc., a deed from the debtors to Catherine Enterprises, Inc., having been recorded in Book 1030, Page 453, in the Office of the Register of Deeds for Craven County, North Carolina, (Spear Exhibit "5"). A deed purporting to convey the real property to the debtors and the trustee was executed by Catherine Enterprises, Inc., on November 7, 1984, and recorded in Book 1071, Page 519, in the Office of the Register of Deeds for Craven County, North Carolina, (Woolard Exhibit "M"). A second deed conveying the same property to the debtors and the trustee was executed by Catherine Enterprises, Inc., and recorded on February 5, 1985, in Book 1076, Page 424, in the Office of the Register of Deeds for Craven County, North Carolina, (Woolard Exhibit "M-1"). The defendants have not persuaded the court that Catherine Enterprises, Inc., still retains ownership of the property.
Both tracts were at one time subject to the life estate of Pattie B. Burton (see Deed dated August 19, 1981, Woolard Exhibit "A"). Mrs. Burton is the mother of Mrs. Doris B. Woolard, and the female debtor, Mrs. Catherine D. Laughinghouse, and Mrs. Woolard had a power of attorney to act for Mrs. Burton, which was duly recorded in Book 1037, Page 261, in the Office of the Register of Deeds for Craven County, North Carolina (Woolard Exhibit "G").
Mr. and Mrs. Woolard had undertaken the care of Mrs. Burton at considerable sacrifice and wanted financial assistance in that regard. Believing that financial aid for Mrs. Burton could not be obtained unless Mrs. Burton's life estate was extinguished, Mrs. Woolard, with the knowledge of Mr. Woolard, exercised her power of attorney and released Mrs. Burton's life estate in September, 1983. (Woolard Exhibits "H," "J," and "K").
Mr. and Mrs. Woolard testified that the release may not have been proper, but their testimony is not convincing on this point, and the court finds that the release of Mrs. Burton's life estate is not invalid. Undoubtedly, Mr. and Mrs. Woolard had knowledge of the life estate and any alleged defect in the release thereof at the time of the sale.
Mr. Spear did not have knowledge of any alleged defect in the release of the life estate at the time of the sale, but subsequent *874 to the sale, was advised by Mr. and Mrs. Woolard that they intend to attack the validity of the release if Mr. Spear purchases, "Tract 4." The Woolard challenge is highly speculative and, based on the evidence presented at trial, the Woolards' chances of success are remote.
In addition to the life estate, the other encumbrance which the defendants maintain should excuse performance of their agreements to purchase, is a ten year lease to J.H. Mills, Jr., encumbering both tracts. A lease for the years 1984 to 1996 of the real property in question from Catherine Enterprises, Inc., to J.H. Mills, Jr., was duly recorded in Book 1044, Page 397, in the Office of the Register of Deeds for Craven County, North Carolina, (Woolard Exhibit "K-1"); the lease also includes the tobacco allotments. Although there was no evidence introduced to indicate that the lease has been satisfied, the trustee represented to the court that Mr. Mills has relinquished any interest in both the real property and the tobacco allotments.
The defendants contend that time was of the essence, and that the trustee did not close the transaction within thirty (30) days. Mr. Woolard testified that he wanted to prepare the land for farming and would not have bid had he known the sale would not close within thirty (30) days. The circumstances surrounding the closing and failure to close are not at all clear from the evidence offered at trial. It is clear, however, that the court order approving the sale was not entered until December 14, 1984, and, since the sale was conditioned on court approval, the sale could not have been consummated before that date. It is also clear that the defendants refused and continue to refuse to close unless all of the alleged encumbrances are removed. It is not reasonable for the defendants to refuse to close the sale on the basis of the alleged Burton life estate. The life estate of Mrs. Burton was released before the sale, and the court finds that the alleged life estate of Mrs. Burton is not reasonable justification for the defendants' failure to close the sale.

DISCUSSION AND CONCLUSIONS
Statute of Frauds
The defendants contend that because there is no written memorandum of the sales contracts signed by the defendants, the sales violate the Statute of Frauds and are not enforceable. This defense is not available, however, to defendant Spear who did not plead the Statute of Frauds as an affirmative defense as required by Rule 8(c) of the Federal Rules of Civil Procedure. Mr. and Mrs. Woolard did properly plead the Statute of Frauds, but that doctrine does not apply to bankruptcy sales conducted by a chapter 7 trustee.
The use of the defense of the Statute of Frauds in connection with an auction sale is not new. A number of courts have held that auction sales are subject to the Statute of Frauds, but have allowed the auctioneer to sign the purchase agreement for the high bidder on the theory that the auctioneer is the high bidder's agent for that purpose.[3]
In 1833, the North Carolina Supreme Court held in Tate v. Greenlee, 15 N.C. 149 (1833), that the Statute of Frauds is inapplicable to judicial sales. While that conclusion has been questioned by the same court in the case of Woodruff v. Piedmont Trust Company, 173 N.C. 546, 92 S.E. 496 (1917), Tate v. Greenlee has not been overruled. The logic which the North Carolina Supreme Court expressed in Tate over 150 years ago, still makes sense today.

*875 These considerations lead me to the result that the sheriff cannot claim the protection of this act [the Statute of Frauds] against a purchaser at an execution sale, paying the price of his purchase, and demanding a conveyance. He cannot, because such a sale is not within the meaning of the act. The converse of the proposition necessarily follows, neither can the purchaser set up this act, as a bar to the demand of the sheriff for the purchase money, the sheriff tendering the conveyance of the property. The object of the statute was to prevent frauds and perjuries, in cases where the value of the property might present strong temptations, and the variety and complexity of the contracts afford scope and facility for the commission of these crimes. Bargains between individuals, created solely by the convention of the parties, are susceptible of innumerable modifications, which may be indistinctly expressed, imperfectly understood, partially remembered, or willfully misrepresented. The thing bought and sold, and its price, do not constitute all or the greater part, and frequently even not the most important part of such contracts. Is there to be any warranty of title, and if so, to what extent? Does the vender stipulate as to the qualities of the thing conveyed? Is he to deliver possession immediately, or at a future day, and then absolutely, or upon some condition? Is the price to be paid down, or before a title is made? If not to be paid down, when, and upon what installments is it to be paid, and what security is to be given to insure its payment? All who are conversant with judicial proceedings know that questions like these, to be decided on parol evidence, have been among the most perplexing that could be presented to a Court and jury, and upon which they have had the strongest reasons to mistrust the accuracy and the integrity of witnesses. But with respect to a judicial sale, the law settles all the modifications of the contract. Nothing remains to be ascertained by testimony but the thing sold, the price and the purchaser, and, as the transaction is in public and by a public competition among the bidders, there is scarcely room left for a dispute about the facts. The Legislature intended to cure the sore and numerous evils which parol evidence necessarily produced in the ascertainment of individual contracts, but had no idea of applying this harsh remedy where no disease existed, and designed not to interfere with these public contracts between the law and individuals, conducted by a sworn and highly trusted officer. Tate v. Greenlee, 15 N.C. 149, 152 (1833).
At an early date, the rule was laid down that a judicial sale under an order of a court of equity was not within the statute of frauds, and that no note or memorandum in writing was necessary; this rule has been followed in most of the later cases and is now supported by the decided preponderance of authority. Equity sales are neither within the letter of the statute nor embraced by its policy. In regard to such sales, its provisions are not obligatory on the court, nor is there any reason why they should be applied upon any principle of analogy. Such sales are conducted under the decrees or orders of the court, which prescribe the terms, and are always guarded by its superintendence, and therefore, cannot be considered within the mischief intended to be provided against. The bidder subjects himself to the jurisdiction of the court, and, in effect, by making his bid, becomes a party to the proceeding in which the sale is made, and may be compelled to complete his purchase by the process of the court. 72 AM.JUR.2D Statute of Frauds § 117 at 658-659 (1974).
The same reasoning applies to sales conducted by chapter 7 bankruptcy trustees under the authority provided by bankruptcy law. 11 U.S.C. § 363 authorizes a trustee to sell property of the estate after notice and a hearing.
The lack of a sufficient memorandum to conform with a state's statute of frauds is no defense against the enforcement of a contract of sale by a trustee in bankruptcy. *876 4B Collier on Bankruptcy ¶ 70.97[4] n. 35, (14th ed. 1978).
It should be noted that Bankruptcy Rule 6004(e)(1) requires the auctioneer to file a statement of the sale with the court. The statement of sale should be filed by a court appointed auctioneer "unless it is impractical"  there is nothing before the court to indicate that such a statement was impractical in these circumstances. That procedure was not followed in this case, but that deficiency is not fatal to the sale.
Caveat Emptor and Misrepresentation
The doctrine of caveat emptor applies to bankruptcy sales. In re Governor's Island, 45 B.R. 247 (Bankr.E.D.N.C. 1984). That doctrine does not apply, however, if there has been a fraud or misrepresentation.
The United States Supreme Court, in the case of Slaughter's Administrator v. Gerson, 80 U.S. 379, 13 Wall. 379, 20 L.Ed. 627 (1871), dealt with the problem of misrepresentation and said:
The misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge; and it must be a misrepresentation upon which he relied, and by which he was actually misled to his injury. A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness. Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations. If, having eyes, he will not see matters directly before them, where no concealment is made or attempted, he will not be entitled to favorable consideration when he complains that he has suffered from his own voluntary blindness, and been misled by overconfidence in the statements of another. And the same rule obtains when the complaining party does not rely upon the misrepresentations, but seeks from other quarters means of verification of the statements made, and acts upon the information thus obtained. 80 U.S. at 383.
The auctioneer announced at the sale that the property was being sold "free and clear of all liens and encumbrances except 1984 ad valorem taxes." The defendants could reasonably infer from this announcement that the trustee had the right to sell the property "free and clear" of any interest in the property. Potential bidders did not have the means to ascertain whether the auctioneer's representation was correct, and, therefore, had to rely on the auctioneer's statement. A bidder could search the title to locate liens and encumbrances, but the record would not disclose whether the trustee had the ability to sell free and clear of those interests.
11 U.S.C. § 363(f) spells out when a trustee may sell property free of interests held by entities other than the estate. One of the most frequently used subsections of § 363(f) is (f)(2) which enables the trustee to sell free of interests of an entity if "such entity consents." The consent need not be part of the bankruptcy record prior to the sale, and therefore, potential bidders could not determine from the record the accuracy of a claim that the property was being sold "free of liens and encumbrances." That being so, in the absence of knowledge to the contrary, bidders could reasonably rely on the auctioneer's announcement. A good faith bidder without notice or knowledge who reasonably relies on a trustee's or auctioneer's representation that property is being sold "free of all liens and encumbrances" should not be compelled to complete the sale if it is determined that the property being sold is subject to material liens or encumbrances.
Trustees and auctioneers may avoid this predicament by announcing the specific liens of which the property is being sold "free and clear." If the trustee or auctioneer *877 follows that practice, the doctrine of caveat emptor applies, and the purchaser may not refuse to close because of any other lien or encumbrance which was not specified.
Because of Mr. Gurkins' announcement at the sale, the defendants would be justified in their refusal to close the transaction if the property is subject to a material lien or encumbrance. The alleged improper release of the Burton life estate, however, is not justification for the defendants' failure to go through with the sale. Mr. and Mrs. Woolard had full knowledge of any alleged defect and cannot now complain. Mr. Spear had no knowledge of the alleged defect, but the threat by the Woolards that they will attack the release of the life estate is too speculative and remote to excuse Mr. Spear's obligation to close the transaction. The trustee, who has indicated that the interests of Catherine Enterprises, Inc., and of J.H. Mills, Jr., have been eliminated, should be given the opportunity to tender title that is "free of liens and encumbrances."
Consequently, judgments shall be entered requiring Mr. and Mrs. Woolard and Mr. Spear to close the sales within thirty (30) days, provided that the trustee can remove the Mills lease from the real property and the tobacco allotment, and provided that the trustee can eliminate any interest in the property of Catherine Enterprises, Inc.
Judgment shall be entered in favor of the defendant Lois Hoell Spear.
NOTES
[1] On December 17, 1984, Mr. and Mrs. Hellen filed a motion seeking to expunge the consent order. A hearing was held on January 25, 1985, and the motion was denied on January 29, 1985.
[2] 11 U.S.C. § 363(b) and Bankruptcy Rule 6004 allow a trustee to sell property of the estate "after notice and a hearing." Court approval is not necessary in the absence of an objection, unless the terms of sale require approval of the court. Sales by trustees in this district are frequently made subject to court approval. In some districts, however, bankruptcy judges will not consider the trustee's motion for sale approval in the absence of an objection. In re Hallamore Corp., 40 B.R. 181, 12 B.C.D. 334 (Bankr.D. MA 1984).
[3] "For purposes of signing a contract for the sale and purchase of real property, an auctioneer at an auction sale is deemed the agent of both seller and purchaser. If land is bid off at an auction sale, the auctioneer is the agent of the purchaser and is authorized to make the memorandum so as to bind the purchaser as to the terms of the sale." Hetrick, Webster's Real Estate Law in North Carolina, § 141, at 156 (rev. ed. 1981), citing Smith v. Joyce, 214 N.C. 602, 200 S.E. 431 (1939); Woodruff v. Piedmont Trust Co., 173 N.C. 546, 92 S.E. 496 (1917); Love v. Harris, 156 N.C. 88, 72 S.E. 150 (1911); Cherry v. Long, 61 N.C. 466 (1868); Proctor v. Finley, 119 N.C. 536, 26 S.E. 128 (1896). See, Greenberg v. Bailey, 14 N.C.App. 34, 187 S.E.2d 505 (1972).