CALVIN ROSE AND WIFE, ESTHER M. ROSE v. TED LANG AND NML BOAT-
BUILDERS, INC., D/B/A LANG YACHTS

No. 863SC773

(Filed 19 May 1987)

**Frauds, Statute of § 7; Ejectment § 1.5— ejectment action—counterclaim for breach of contract—writing sufficient**

In an action for summary ejectment in which defendants counterclaimed for breach of contract, the trial court erred by granting plaintiffs' motion for summary judgment as to the counterclaim where plaintiffs offered in support of their motion only an affidavit that there had been no written agreement and defendants' evidence was sufficient to establish that a written memorandum in compliance with N.C.G.S. § 22-2 was signed. The statute of frauds does not require all provisions of the contract to be set out in a single instrument, and the court's two other bases for summary judgment, that the plaintiff husband and his attorney were not agents for plaintiff wife and that the property to be conveyed could not be identified, were not relevant on appeal.

Judge ARNOLD concurs in the result.

APPEAL by defendants from *Phillips, Herbert O., III, Judge.* Order entered 14 April 1986 in Superior Court, CARTERET County. Heard in the Court of Appeals 17 December 1986.

*Nelson W. Taylor, III for plaintiff appellees.*

*John E. Way, Jr. for defendant appellants.*

PHILLIPS, Judge.

Plaintiffs sued defendants in summary ejectment for wrongfully occupying two tracts of land on Harkers Island that they owned as tenants by the entireties. Defendants counterclaimed alleging that they were in lawful possession of the property under a written contract to buy it and that plaintiffs had breached the agreement. Several months after suit was filed and following a hearing at which affidavits, maps, letters, and checks were presented into evidence, the court dismissed defendants' counterclaim by an order of partial summary judgment. In effect the court's order is based upon three major findings — that the alleged contract to sell real estate is not evidenced by an executed written memorandum as required by the statute of frauds; that the writing relied upon, a check endorsed by Calvin Rose, but not Esther M. Rose, does not describe sufficiently the property to be conveyed and does not refer to anything extrinsic from which the description can be found; and that in the negotiations and transactions involved neither the male plaintiff nor attorney Nelson W. Taylor was the agent of the femme plaintiff, who signed no writing of any kind. Obviously, if either of these findings is valid defendants' counterclaim cannot possibly be won, and the court properly dismissed it; for one clear basis for dismissing a claim by summary judgment is the non-movant's inability to support an essential element of his claim with evidence, *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974), and it is elemental law that a contract for the sale of real estate in this state must be supported by a paper writing which complies with the statute of frauds and that when the property involved is owned by two people it must be shown that each owner either executed, authorized or approved the writing or writings relied upon. Even so, neither of the court's findings was validly made in our opinion, and we vacate the order.

The court's findings that Calvin Rose and Nelson W. Taylor were not agents for the femme plaintiff, and that the property to be conveyed cannot be identified, either from a writing or extrinsic evidence, require little discussion and no definitive evidentiary statement because they are based upon the defendants' failure to present evidence with respect thereto, an obligation defendants did not have under the circumstances recorded. The only evidence that plaintiffs offered in support of their motion consisted of Calvin Rose's affidavit, the relevant portion of which merely states in substance that neither of the defendants signed the written Offer to Purchase and Contract submitted to them "and therefore no written agreement has been reached by the parties to this action." In the affidavit nothing whatever is said about the femme plaintiff not authorizing the sale, or about Calvin Rose or Nelson W. Taylor not being her agent, or about it being impossible to identify the land that was to be sold. As non-movants at a hearing on a motion or summary judgment, defendants did not have to automatically present evidence as to all the elements of their claim as they will at trial; they only had to refute any showing by plaintiffs that the claim is fatally deficient. *Hall v. Funderburk*, 23 N.C. App. 214, 208 S.E. 2d 402 (1974). As the movants for summary judgment plaintiffs had the burden of clearly establishing by the record presented to the court that there was no triable issue of fact in regard to defendants' counterclaim. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1978). Since plaintiffs' forecast of proof was silent as to defendants' inability to identify the property to be conveyed and as to Calvin Rose and Nelson Taylor not being the agent of the femme plaintiff their burden on these issues was not even approached much less sustained, and defendants were not required to contest or overcome either proposition. Thus, whether defendants' forecast of proof failed to indicate that Calvin Rose or Nelson W. Taylor was the agent of the femme plaintiff or that the property to be conveyed can be identified either from a writing or by evidence extrinsic to it, as the court found, is irrelevant to this appeal and will not be determined.

Though the court's other finding—that there was no executed written memorandum of the alleged contract to buy or sell real estate—was properly addressed by plaintiff's affidavit, it was adequately responded to by defendants' affidavits, checks, letters

and maps, which were to the following effect: Defendant Ted Lang, President of NML Boatbuilders, Inc., a Delaware corporation, came to Carteret County in the summer of 1984 and negotiated with plaintiff Calvin Rose about buying a complete boat works facility on Harkers Island from him and his wife. Rose showed the facility to Lang as consisting of two tracts of real estate as follows: One tract, on the south side of Bay View Drive consisting of Lots 1, 2, 3 and 4, according to a survey map of plaintiffs' property, on which certain buildings used in the boat works business were situated; the other tract, on the north side of the drive and adjacent to a boat basin that connects with West Mouth Bay, consisting of Lots 54, 55, 56 and 57, according to the same map. Rose and Lang agreed that defendants would buy and plaintiffs would sell the foregoing lots for $360,000 on terms stated below. They also discussed defendants buying three other lots behind the boatyard, identified on the map of plaintiffs' property as Lots 15, 16 and 17, and agreed that those lots would be bought and sold for an additional $30,000. After these discussions and negotiations plaintiffs had their lawyer Nelson W. Taylor to submit a writing entitled Offer to Purchase and Contract to defendants. This was done by Taylor's 6 September 1984 letter, which stated that upon the defendant corporation executing the agreement and otherwise complying with its terms he would have Mr. and Mrs. Rose sign the agreement also. The Offer to Purchase and Contract, a printed form with certain blanks filled in, did the following: It listed NML Boatbuilders, Inc. as buyer, Calvin Rose and wife, Esther Rose, as sellers; in the place for describing the real property involved it referred to an "Attached Exhibit A," a survey map of plaintiffs' property on Harkers Island; it stated the purchase price to be $360,000, $25,000 payable at closing, and a $335,000 promissory note at 9% interest payable in 180 monthly payments of $3,398.01 each, commencing thirty days after closing; it called for $5,000 in earnest money to be deposited with plaintiffs' attorney and for the transaction to be closed before 10 October 1984. But the writing did not state any terms for the purchase of the three lots situated behind the boatyard. On 24 September 1984 plaintiffs' lawyer wrote defendants another letter enclosing "an itemized list of tools which is to be a part of the sale." On 8 October 1984 Lang responded to the foregoing communications with a $5,000 check payable to the order of plaintiff Calvin Rose with the following notation written on the back:

> This $5K on account of Boat Works Complete $360K—and 3
> Attached lots—$30K—seller financing $365K—15 years—
> $3,702.00 monthly (Boat Works) and $1,000.00 every 6 months
> 3 Lots—Closing A.S.A.P. for N.M.L. Boatbuilders, Inc.

/s/ Calvin Rose

Plaintiff Calvin Rose scratched out the "and $1,000.00 every 6 months" notation, cashed the check, and permitted defendants to take possession of the two tracts of land allegedly comprising the boat works; and from time to time thereafter he also acquiesced in several requests to delay the closing. On 13 November 1984 Lang gave Rose a $3,000 check which he accepted, endorsed and cashed; it had the following notation typed on the back above the endorsement:

> This $3,000 on account of Boat Works complete—$360,000
> with all tools except hand, and 3 attached rear lots—$30,000
> —, Total $390,000 Seller financing $365,000 15 Years at 9%.
> Paid $5,000 8 Oct—Ck no 1948, & this no. 2131—31 Nov =
> $8,000 Balance ($25,000 total down required) $17,000—Closing
> ASAP for NML Boatbuilders

/s/ Calvin Rose

Thereafter defendant company moved its boat building business to plaintiffs' property on Harkers Island and spent approximately $72,500 in improving the property. Defendants also delivered the following checks to Rose, each of which was endorsed and cashed: 16 January 1985 ($2,500); 5 February 1985 ($1,000); 28 February 1985 ($2,000); 18 March 1985 ($500); 26 March 1985 ($300); and 29 March 1985 ($700). By letter dated 5 April 1985 Lang notified plaintiffs' lawyer that defendants were ready to close the transaction upon receiving a certificate of title, but complained about a derelict boat named "Linda Gale" being left in the boat basin and about some tools, other than "hand tools," being removed by Mr. Rose. By letter to Mr. Lang dated 10 April 1985 Mr. Taylor made the following points or statements: The tools that were to go with the sale were only those on the list given him several months earlier, which did not mention hand tools; the Roses' patience with Lang unduly delaying the closing had reached its limit; an understanding needed to be reached about the three extra lots not covered by the original contract, and he proposed that defendants

buy them for $30,000 and pay for them over a five-year period; and that the "Linda Gale" would be removed before the closing. Taylor had all the property above described surveyed in anticipation of closing the transaction, but for reasons irrelevant to this appeal the transaction was not closed and suit followed.

Leaving aside the agency and property description issues not raised by plaintiffs' evidence in the court below, defendants' forecast of proof, when viewed in its most favorable light for them as the law requires, is sufficient in our opinion to establish that a written memorandum in compliance with G.S. 22-2 was signed by both the plaintiff Calvin Rose and the defendant Ted Lang. That neither signed the form contract prepared by Mr. Taylor is not decisive; for the statute of frauds does not require all the provisions of the contract to be set out in a single instrument. "The memorandum required by the statute is sufficient if the contract provisions can be determined from separate but related writings." *Hines v. Tripp*, 263 N.C. 470, 474, 139 S.E. 2d 545, 548 (1965). The necessary memorandum in this case can consist, if the jury so finds, of the several checks that both Rose and Lang signed, along with the unsigned contract, the maps and letters, which the checks obviously relate to. These writings and the other evidence support the inference that Calvin Rose agreed in writing to sell the two boat works tracts to the defendants for $360,000, and the three other lots behind the boat works for $30,000, with $25,000 being paid at closing and the remaining $365,000 being paid in monthly installments over a fifteen year period at 9% interest. The evidence supports the inference that the parties agreed as to the sale and purchase of the two boat works tracts when defendants' $5,000 check was accepted, as the same terms are stated for those lots in both the unsigned contract, prepared at plaintiffs' direction, and on defendants' check signed by both Lang and Rose, after which Calvin Rose permitted defendants to occupy those lots. The evidence also supports the inference that after rejecting defendants' offer to buy the three additional lots by paying $1,000 thereon every six months, made by their initial check, that plaintiffs accepted the offer made by the 13 November 1984 check to pay the $30,000 purchase price in monthly installments over a fifteen year period with 9% interest.

Since the record before us does not clearly establish that there is no genuine issue of material fact to try in regard to

defendants' counterclaim, we vacate the order appealed from and remand the case to the Superior Court for a trial on defendants' counterclaim as well as upon the claim stated in plaintiffs' complaint.

Vacated and remanded.

Judge ORR concurs.

Judge ARNOLD concurs in the result.