THE POOLE & KENT CORPORATION v. C. E. THURSTON & SONS,
INC.

No. 5

(Filed 26 November 1974)

1. **Master and Servant § 15— Right to Work Law**

    North Carolina, acting under its police power, has established that
    the public policy is to protect a workman's right to obtain and hold
    a job without regard to membership or lack of it in a labor union.

2. **Contracts § 1— existing laws as part of contract**

    Valid laws existing at the time and place a contract is entered
    into and at the place where it is to be performed are read into and
    become a part of the contract unless a clear intent to the contrary is
    disclosed by the contract.

3. **Contracts § 21; Master and Servant § 15— subcontract clause requiring union workers — Right to Work Law**

    Subcontract provision requiring the subcontractor to use labor
    "of a standing or affiliation that will permit the work to be carried
    on harmoniously and without delay" could not be enforced against the
    subcontractor on the ground that the subcontractor's employees were
    not operating under a union contract because such enforcement would
    violate the Right to Work Laws, and the contractor's cancellation of
    the subcontract for such reason constituted a breach of contract. G.S.
    95-79; G.S. 95-80; G.S. 95-81.

    Chief Justice BOBBITT not sitting.

ON *certiorari* to the North Carolina Court of Appeals to
review its decision filed March 6, 1974 (21 N.C. App. 1, 203
S.E. 2d 74) affirming the judgment by *Gambill, J.*, entered at
the June 5, 1972 Session, Superior Court of FORSYTH County:
(1) dismissing the plaintiff's cause of action; and (2) adjudging that the defendant recover from the plaintiff such damages
as it may have sustained by reason of the plaintiff's wrongful
breach of the contract between the parties.

This case had its genesis in this factual background: In
the late 1960's North Carolina Baptist Hospitals, Inc., a North
Carolina corporation (Hospitals) entered into a contract with
Robert E. McKee General Contractor, Inc., a Texas corporation
(McKee) under the terms of which McKee contracted to construct an addition to the Baptist Hospital in Winston-Salem for
an agreed price of $16,000,000.00. On March 6, 1969, McKee
entered into a contract with the plaintiff Poole & Kent Corporation, a Maryland corporation (Poole & Kent) by the terms of

which Poole & Kent agreed to do all the mechanical installation work on the project for the sum of $4,500,000.00. On March 27, 1969, Poole & Kent entered into a contract with C. E. Thurston & Sons, Inc., a Virginia corporation (Thurston) by which Thurston agreed to furnish all materials and perform all labor incident to insulating the mechanical work installed by Poole & Kent at an agreed price of $285,000.00. McKee was the general contractor. Poole & Kent, as subcontractor, agreed to do the mechanical work on the construction. Thurston, as a second tier subcontractor, agreed to do the insulation on all Poole & Kent's mechanical work. The contract for the insulation contained this provision:

> "(12) At all times Subcontractor shall provide competent supervision, a sufficient number of skilled workmen, and adequate and proper materials to maintain the progress required by Contractor. All labor used throughout the work shall be acceptable to the Contractor and of a standing or affiliation that will permit the work to be carried on harmoniously and without delay, and that will in no case or under any circumstances cause any disturbance or delay to the progress of the building, structure of facilities or any other work being carried on by the Contractor, Owner and/or General Contractor. Attendance by an authorized representative of Subcontractor at progress meetings, when requested, is an obligation under this agreement."

At the time Poole & Kent and Thurston entered into their contract, Thurston and its employees were parties to a collective bargaining agreement with a local Asbestos Workers Union, an affiliate of the American Federation of Labor. On May 1, 1969, the bargaining agreement expired and was never renegotiated.

After the bargaining agreement expired, Thurston, apparently with his original work force, continued with its insulation work. However, Thurston was given an exclusive entrance for the use of its employees in going to and from the job so that Thurston's workers would not interfere with the workers of other contractors on other parts of the job.

As Thurston proceeded with its insulation work, certain members of the local Asbestos Workers Union began picketing Thurston's entrance to the hospital project. As a result, the em-

ployees of Poole & Kent and other subcontractors refused to report for work and indicated their continued refusal until Thurston renewed its contract with the Asbestos Workers Union or was removed from the job.

On December 13, 1970, Poole & Kent notified Thurston by telegram that the defendant's labor force was in violation of Section 12 of the contract and that noncompliance would cause immediate termination of the contract. Thurston replied: "Contents of your telegram . . . not sufficient reason to cancel our contract. Therefore we will man the job today per our contractual obligation." Thurston sent its personnel to the project. On December 15, 1970, Poole & Kent instituted this action in the Superior Court of Forsyth County against Thurston alleging as its cause of action a breach of contract dated March 27, 1969. Using the complaint as an affidavit, Poole & Kent obtained from the court a temporary restraining order enjoining Thurston from continuing its work force on the job and ordering the removal of its equipment and material. The complaint alleged that Thurston had breached its contract with Poole & Kent by using an unacceptable work force (non-union men) and that the plaintiff recover damages for the breach. The court issued the restraining order which thereafter kept Thurston's men off the job.

On April 26, 1971, Thurston filed answer and counterclaim denying it had breached its contract with Poole & Kent, alleging that Poole & Kent had wrongfully breached its contract with Thurston and had wrongfully procured the injunction and wrongfully removed Thurston and its employees from the project to Thurston's damage in the amount of $95,000.00. Poole & Kent filed a reply denying Thurston's counterclaim.

Poole & Kent filed a written motion for summary judgment. The parties waived a jury trial and consented that the judge should hear the evidence, find pertinent facts and enter judgment. At the pre-trial conference the parties stipulated that the employment contract between the Asbestos Workers Union and Thurston in effect at the date of the contract had expired by mutual consent of the parties.

At a pre-trial conference held May 22, 1972, the parties listed a number of prospective witnesses, made many stipulations, and identified many exhibits for the consideration of the court in its fact finding function (a jury having been waived).

The record discloses that the plaintiff, Poole & Kent, moved for (a) partial summary judgment; (b) a separate trial of the damage issue; and (c) for compulsory reference.

The plaintiff submitted these issues for determination by the court: (a) Did defendant (Thurston) breach its contract with the plaintiff (Poole & Kent) as alleged in the complaint; (b) what amount of damages, if any, is the plaintiff entitled to recover. The defendant submitted these issues: (a) Did the plaintiff (Poole & Kent) breach its contract with the defendant (Thurston) as alleged in the defendant's counterclaim; (b) what damages, if any, is defendant entitled to recover.

The court made these findings of fact:

"9. On November 27, 1970, plaintiff caused the following telegram to be sent to defendant:

'It has been brought to our attention that the men which you have working on the hospital additions and alterations for the North Carolina Baptist Hospitals, Inc., project are not working under the terms of a union collective bargaining agreement.

'If this situation causes disruption of our work on the aforementioned project, it will be necessary to take immediate steps to remedy same.'

\*   \*   \*   \*   \*   \*

"11. At various times prior to December 10, 1970, representatives of various labor unions advised representatives of Robert E. McKee, General Contractor, Incorporated and plaintiff to have the defendant removed from the construction project because its employees were not members of the local union of the Asbestos Workers Union. These union representatives went on to say that unless union members were used to perform the work of the defendant, the construction project would be shut down by the unions.

\*   \*   \*   \*   \*   \*

"13. At all times material, the defendant paid wages and fringe benefits to its employees on the said construction project in accordance with the schedule of wages and benefits specified in its agreement of subcontract with plaintiff.

Poole & Kent Corp. v. Thurston & Sons

\*   \*   \*   \*   \*   \*

"16. At all times material, defendant provided competent supervision, a sufficient number of skilled workmen, and adequate and proper materials to maintain the progress required by plaintiff on the said construction project.

"17. The defendant did not follow a policy of refusing to hire employees who belonged to a labor union. On the contrary, the evidence showed that the defendant hired employees to work on the said construction project irrespective of their membership or non-membership in a labor union.

\*   \*   \*   \*   \*   \*

"20. On December 13, 1970, plaintiff caused the following telegram to be sent to the defendant:

'Your present labor force is in violation of paragraph 12 of standard terms of our agreement. You are therefore directed not to send such personnel to the job tomorrow. Any non-compliance with this directive will cause immediate termination of contract.'

\*   \*   \*   \*   \*   \*

"23. Defendant continued to work and on December 15, 1970, plaintiff obtained an ex parte injunction in the General Court of Justice, Superior Court Division of North Carolina, enjoining and restraining defendant's employees from remaining on or returning to the job site. In compliance with said order, defendant's employees left the job site and have not returned.

\*   \*   \*   \*   \*   \*

"25. On February 11, 1971, plaintiff wrote to defendant (plaintiff's Exhibit 9):

'Under the provisions of Item 4 (Standard Terms and Conditions) of our Contract with you dated March 27, 1960 [sic], to perform work on the above referenced structure, you are hereby notified that said Contract is hereby cancelled.'

\*   \*   \*   \*   \*   \*

"28. Defendant is entitled to recover its damages, including any loss of profits, it suffered as a result of the plaintiff's illegal actions in removing the defendant from the project and cancelling its agreement of subcontract."

The court drew these conclusions of law:

"1. The defendant at all times complied with the terms of its agreement of subcontract with the plaintiff until it was prohibited from further compliance by the plaintiff.

"2. The plaintiff wrongfully terminated its agreement of subcontract with the defendant.

"3. The defendant is entitled to recover damages from the plaintiff for breach of contract, the amount of which shall be ascertained at a subsequent trial.

"4. The plaintiff is entitled to recover nothing of the defendant."

Upon the basis of the findings of fact and the conclusions of law drawn from them, the court entered judgment: (1) The plaintiff recover nothing from the defendant; (2) the defendant recover from the plaintiff such amount as the defendant shall at a subsequent trial prove it had been damaged by the wrongful breach of contract by the plaintiff. The parties stipulated that the plaintiff's liability to the defendant be determined at a later time. Neither party contended the appeal was fragmentary or premature.

The court answered the issues as indicated. Left for future determination, according to the stipulations, was the amount of damages the defendant is entitled to recover from the plaintiff.

The plaintiff appealed to the North Carolina Court of Appeals. That court affirmed the judgment of the superior court. Our writ of certiorari brought the case here for our further review.

*Randolph and Randolph by Clyde C. Randolph, Jr., for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton and Robinson by Norwood Robinson; Thompson, Ogletree and Deakins by Guy F. Driver, Jr., for defendant appellee.*

HIGGINS, Justice.

The record before us discloses that the procedures in the trial court were regular, the evidence was sufficient to support the findings of fact, and the findings were sufficient to support the conclusions of law and the judgment.

Poole & Kent Corp. v. Thurston & Sons

---

The Court of Appeals, after its careful review, correctly concluded the judgment of the superior court should be affirmed. Judge Parker's opinion is so complete and well documented that little need be said here except that we approve.

Although the material facts in the case are not in dispute, nevertheless in view of the important questions of law involved, some discussion by this Court seems not altogether out of place.

At the time the parties entered into the contract which is the subject of this dispute, Thurston, a Virginia corporation, was party to a labor agreement with the Asbestos Workers Local Union No. 72. That agreement expired on May 1, 1969. On competent evidence, the trial court found: "[T]hat the Asbestos Workers Union did not sign collective bargaining agreements with contractors, such as the defendant, who did not maintain a permanent place of business within the local union's geographic jurisdiction." The defendant, a Virginia corporation which maintained its home office at Roanoke, Virginia, did not maintain a permanent place of business within North Carolina or within the geographic jurisdiction of the local Asbestos Workers Union.

The court found upon competent evidence that the defendant (Thurston) at all times "provided competent supervision, a sufficient number of skilled workmen, and adequate and proper materials to maintain the progress required by plaintiff on the said construction project." (Finding of Fact No. 16.) The court also found upon competent evidence that "the defendant hired employees to work on the said construction project irrespective of their membership or non-membership in a labor union." (Finding of Fact No. 17.)

The complaint and the picketing protest against Thurston were initiated by the Asbestos Workers Union solely because Thurston did not operate under a union contract with its employees. And yet the Union had refused to enter into such contract unless the defendant established and maintained a permanent business office in the jurisdiction of Asbestos Workers Local Union No. 72. Thurston did not accede to the Union's demand that it move its headquarters from Roanoke, Virginia, or that it set up additional headquarters in the Winston-Salem area. Thurston claims, therefore, that the responsibility for its failure to renew its contract with the local union, was the Union's unreasonable demand that Thurston establish perma-

nent headquarters in Winston-Salem, which at no time did Thurston agree to do.

The trial court properly concluded the Union was alone responsible for the failure of Thurston and the Union to renew the contract. The record fails to disclose any right on the part of the Asbestos Workers Union, or any other agency, to require that Thurston move its headquarters to Winston-Salem. The record discloses that Thurston, in the absence of a contract, continued to pay union wages and provide fringe benefits to all members of its labor force regardless of membership or lack of it in a labor union.

At the time the critical events in this case occurred, North Carolina Statutes G.S. 95-79, G.S. 95-80 and G.S. 95-81 were in effect.

"§ 95-79. *Certain agreements declared illegal.*—Any agreement or combination between any employer and any labor union or labor organization whereby persons not members of such union or organization shall be denied the right to work for said employer, or whereby such membership is made a condition of employment or continuation of employment by such employer, or whereby any such·union or organization acquires an employment monopoly in any enterprise, is hereby declared to be against the public policy and an illegal combination or conspiracy in restraint of trade or commerce in the State of North Carolina.

§ 95-80. *Membership in labor organization as condition of employment prohibited.*—No person shall be required by an employer to become or remain a member of any labor union or labor organization as a condition of employment or continuation of employment by such employer.

"§ 95-81. *Nonmembership as condition of employment prohibited.*—No person shall be required by an employer to abstain or refrain from membership in any labor union or labor organization as a condition of employment or continuation of employment."

These statutes have been held by this Court to constitute the public policy of North Carolina with respect to the right to work. *Aircraft Co. v. Union,* 247 N.C. 620, 101 S.E. 2d 800; *Willard v. Huffman,* 247 N.C. 523, 101 S.E. 2d 373, citing as

authority many cases including decisions of the Supreme Court of the United States.

[1]  The foregoing statutes, stripped to their nakedness, disclose that North Carolina, acting under its police power, has established that the public policy is to protect a workman's right to obtain and hold a job without regard to membership or lack of it in a labor union.

[2]  Valid laws existing at the time and place a contract is entered into and at the place where it is to be performed, are read into and become a part of a contract unless a clear intent to the contrary is disclosed by the contract. "It is a general rule that contracting parties are presumed to contract in reference to the existing law; indeed, they are presumed to have in mind all the existing laws relating to the contract. . . ." 17 Am. Jur. 2d, Contracts, § 257, page 654; *Farmers and Merchants Bank of Monroe v. Federal Reserve Bank of Richmond,* 262 U.S. 649; *Adair v. Burial Assoc.,* 284 N.C. 534, 201 S.E. 2d 905; *Pike v. Trust Co.,* 274 N.C. 1, 161 S.E. 2d 453; *Spearman v. Burial Assn.,* 225 N.C. 185, 33 S.E. 2d 895; *Bateman v. Sterrett,* 201 N.C. 59, 159 S.E. 14.

The foregoing North Carolina Statutes are presumed to have been within the contemplation of the parties to this action when they entered into the contract of March 27, 1969.

[3]  As the trial court concluded, the legal responsibility for the breach of the contract of March 27, 1969, should be charged to Poole & Kent for the unwarranted cancellation of the contract upon the sole ground Thurston's force was not operating under a union contract. Poole & Kent gave notice the contract was cancelled. Also it applied for and obtained from the court a temporary order removing Thurston's men, material and equipment from the project.

We conclude the decision of the North Carolina Court of Appeals is amply supported by the record. That decision should be and is now

Affirmed.

Chief Justice BOBBITT not sitting.