FAGEN'S OF NORTH CAROLINA, INC., FORMERLY E.L. MORRISON LUMBER COMPANY, INC. v. ROCKY RIVER REAL ESTATE COMPANY, JAMES BANKS MYERS, III, A/K/A JAMES B. MYERS, III AND KATHY GORDON PEYTON

No. 9426SC244

(Filed 3 January 1995)

**1. Guaranty § 13 (NCI4th)— guaranty agreement—terms prevail over general guaranty law**

The terms of the parties' guaranty agreement prevailed over general guaranty law so that defendant could be held liable as guarantor only if he was found to have benefited from the extension of credit to the borrower company or was found to be an officer of the borrower company.

**Am Jur 2d, Guaranty §§ 26 et seq.**

## 2. Guaranty § 13 (NCI4th)— no personal benefit from extension of credit—defendant not personally liable

Under the terms of the parties' guaranty agreement, defendant was not jointly or severally liable under either a contract or quantum meruit theory because the evidence was insufficient to support the trial court's finding that defendant personally benefited from the extension of credit to defendant company where such evidence tended to show that defendant had no interest in defendant company at the time of the credit application; assets of defendant company were subsequently transferred to a business in which defendant had an interest, but such transfer did not demonstrate that only benefit passed to the business upon the extension of credit by plaintiff to defendant company; and there was nothing in the record to suggest that defendant company and defendant's business interest, at the time credit was extended, were anything but separate and distinct business entities.

**Am Jur 2d, Guaranty §§ 26 et seq.**

Judge WYNN dissenting.

Appeal by defendant James Banks Myers, III, from judgment entered 2 November 1993 in Mecklenburg County Superior Court by Judge Robert M. Burroughs. Heard in the Court of Appeals 21 October 1994.

*Reginald L. Yates for plaintiff-appellee.*

*John E. Hodge, Jr., and Burris & MacMillan, by Robert N. Burris, for defendant-appellant James B. Myers, III.*

GREENE, Judge.

James B. Myers, III (Myers) appeals from a judgment for Fagen's of North Carolina, Inc. (plaintiff), decreeing him liable as a guarantor for a debt of Rocky River Real Estate Company (Rocky River).

Plaintiff sued defendants Myers, Rocky River and Kathy Peyton (Peyton) for $19,425.68, representing principal and interest due for nonpayment of building materials sold by plaintiff to Rocky River. The evidence reveals that the plaintiff accepted two credit applications from Rocky River, the first dated 10 July 1989 and the second dated 26 February 1990, both of which, the plaintiff alleges, are signed by Myers as "Guarantor and Pledgee." The credit applications provided in part:

**FAGEN'S OF NORTH CAROLINA v. ROCKY RIVER REAL ESTATE CO.**

[117 N.C. App. 529 (1995)]

In consideration of credit being extended by [plaintiff] to me/us/it, I . . . certify the truthfulness and veracity of the statement appearing on opposite side, and I . . . guarantee and bind [myself] to the faithful payment of all amounts purchased or now owing, by us or either of us, or any other person, firm or corporation *for our benefit.* If credit is extended to a corporation in which we, or I am an officer, or in which an interest exists I . . . will personally faithfully guarantee the payment of all credit extended to said corporation.

[Emphasis added.] Myers testified that, at the time of both credit applications, he was neither a partner nor an officer in Rocky River as he had transferred his interest in Rocky River to Peyton on 3 January 1989. The evidence also shows that at some time prior to 3 January 1989 the assets of Rocky River were transferred to LADM Group (LADM), a business entity partially owned by Myers.

Jewel Kee (Kee), plaintiff's credit manager, testified that, during a "mid-1990" meeting with Myers, he asked Kee to "hold the credit limit to $20,000 because he felt that was the maximum amount he could be personally liable for."

In a non-jury trial, the trial court found that Myers signed both guaranty agreements and that Myers "accepted and benefited from the extension of credit by the plaintiff." The trial court then concluded that Myers is jointly and severally, with Rocky River and Peyton, liable to plaintiff on theories of contract and quantum meruit.

---

The issues on appeal are (I) whether the terms of this guaranty agreement prevail over general guaranty law; and if so, (II) whether the evidence supports the finding of the trial court that Myers benefited from the credit extended to the plaintiff.

I

**[1]** Myers argues that he can be held liable as guarantor only if he is found to have benefited from the extension of credit to Rocky River or is found to be an officer of Rocky River. The plaintiff contends that "it is not necessary that the promisor [sic] receive consideration or something of value himself" in order to hold Myers responsible as guarantor. We agree with Myers.

Although it is not generally necessary for a guarantor to receive a personal benefit to support a contract of guaranty, *see Forsyth Co. Hosp. Auth., Inc. v. Sales,* 82 N.C. App. 265, 267, 346 S.E.2d 212, 214

(discussing nature of contract of guaranty), *disc. rev. denied*, 318 N.C. 415, 349 S.E.2d 594 (1986); *Howard v. Hamilton*, 28 N.C. App. 670, 674, 222 S.E.2d 913, 917 (1976) (discussing the main purpose rule), specific contractual terms and intent, as opposed to general statements of law, control any agreement. *See Poole & Kent Corp. v. C.E. Thurston & Sons*, 286 N.C. 121, 129, 209 S.E.2d 450, 455 (1974).

In the present case, the plaintiff and Myers entered a contract for guaranty which only bound Myers if he received a personal benefit from the plaintiff's extension of credit or if he were an officer of the corporation receiving the credit.[1] Thus we determine Myers' liability under the terms of this contract.

II

[2] Although there was no finding by the trial court as to Myers' status as an officer of Rocky River, the trial court did make a factual finding that Myers personally benefited from the credit extension. The question therefore is whether there is any competent evidence in the record to support this finding. *Weston v. Carolina Medicorp, Inc.*, 102 N.C. App. 370, 372, 402 S.E.2d 653, 654, *dismissal allowed, disc. rev. denied*, 330 N.C. 123, 409 S.E.2d 611 (1991).

The plaintiff argues that Myers did benefit from the extension of credit to Rocky River because the "assets of Rocky River Real Estate were transferred to LADM Group, another business interest of Myers." We disagree. Myers had no interest in Rocky River at the time of the credit application. He had previously transferred his stock to Peyton. Furthermore, LADM's ownership of the assets once owned by Rocky River does not demonstrate that any benefit passed to LADM upon the extension of credit by the plaintiff to Rocky River. There is nothing in this record to suggest that Rocky River and LADM, at the time the credit was extended by plaintiff to Rocky River, were anything but separate and distinct business entities. Accordingly, the finding of the trial court that Myers benefited from the extension of credit to Rocky River is not supported by competent evidence. It thus

---

1. Even if we were to construe the agreement, as does the dissent, that Myers is liable on the guaranty agreement if either he or Peyton received a benefit from the extension of credit by plaintiff to Rocky River or if either was an officer in Rocky River at the time of the credit extension, the trial court must nevertheless be reversed. There are no findings in the order of the trial court that Peyton received any benefit from the extension of credit to Rocky River or was an officer of Rocky River.

FAGEN'S OF NORTH CAROLINA v. ROCKY RIVER REAL ESTATE CO.

[117 N.C. App. 529 (1995)]

follows that the trial court's conclusion that Myers' is jointly and severally liable as a guarantor for the principal amount of Rocky River's debt is without support.

The trial court's conclusion of law that Myers is bound to plaintiff on the alternative theory of quantum meruit is likewise .without support, because that theory would also require some benefit passing to Myers upon the extension of credit to Rocky River. *See Bales v. Evans*, 94 N.C. App. 179, 181, 379 S.E.2d 698, 699 (1989) (to recover on the theory of quantum meruit, plaintiff must show that nongratuitous services were rendered *to defendant*). We also reject the plaintiff's contention that the judgment must be affirmed on the basis that the "mid-1990" conversation between Kee and Myers created an oral contract of guaranty. This theory is not supported by the trial court's findings of fact and the uncontroverted evidence in the record cannot support this Court entering the findings of fact required to sustain recovery on this basis. *See Harris v. N.C. Farm Bureau Mut. Ins. Co.*, 91 N.C. App. 147, 150, 370 S.E.2d 700, 702 (1988) (appellate courts can draw inferences from undisputed facts when no findings are made by the trial court). Thus we do not further address that argument.

For these reasons the judgment of the trial court is

Reversed.

Judge JOHN concurs.

Judge WYNN dissents.

Judge WYNN dissenting.

I respectfully dissent because I disagree with the majority's conclusion that the guaranty contract in the instant case binds Mr. Myers only if he "received a personal benefit from plaintiff's extension of credit or was an officer of the corporation receiving the credit." I find that the contract establishes an unconditional personal obligation on the part of Mr. Myers to guarantee repayment to plaintiff for credit extended to Rocky River Real Estate Co. (Rocky River). Contracts of guaranty and contracts of suretyship are two methods in which a party can become obligated on a debt.

A guaranty is a promise to answer for the payment of a debt or the performance of some duty in the event of the failure of another person who is himself primarily liable for such payment or per-

**FAGEN'S OF NORTH CAROLINA v. ROCKY RIVER REAL ESTATE CO.**

[117 N.C. App. 529 (1995)]

formance. A surety is a person who is primarily liable for the payment of the debt or the performance of the obligation of another. While both kinds of promises are forms of security, they differ in the nature of the promissor's liability. A guarantor's duty of performance is triggered at the time of the default of another. On the other hand, a surety is primarily liable for the discharge of the underlying obligation, and is engaged in a direct and original undertaking which is independent of any default.

*Hofler v. Hill*, 311 N.C. 325, 332, 317 S.E.2d 670, 674 (1984) (quoting *Branch Banking & Trust Co. v. Creasy*, 301 N.C. 44, 52-53, 117 S.E.2d 117, 122 (1980)).

In the instant case, the relevant contract language reads as follows:

In consideration of credit being extended by MORRISON BROTHERS to me/us/it, I and/or we certify the truthfulness and veracity of the statement appearing on opposite side, and I and/or we guarantee and bind ourselves to the faithful payment of all amounts purchased or now owing by us or either of us, or any other person, firm or corporation for our benefit.

This contract was signed by Kathy Gordon Peyton and Mr. Myers. Mr. Myers argued before the trial court that his signature was a forgery. The trial court, however, found as fact that Mr. Myers executed the contract and this finding is supported by credible evidence.

The contractual language provides that in exchange for the credit provided by plaintiff to Rocky River, Ms. Peyton and Mr. Myers "guarantee and bind ourselves to the faithful payment of all amounts purchased or now owing." This language is simply an unconditional promise by Ms. Peyton and Mr. Myers to repay any debt incurred by Rocky River.

The majority, however, construes this language to mean that Mr. Myers would be bound by the guaranty only "if he received a personal benefit from plaintiff's extension of credit." I cannot discern this meaning from the language.[1] Rather, it is my view that this language simply provides that Mr. Myers and/or Ms. Peyton guarantee payment

---

1. The majority's footnote suggests that this dissent supports a benefit analysis. Instead, the focus here is that Mr. Myers incurred a personal obligation to repay plaintiff for credit extended to Rocky River. This contention is further supported by noting that Rocky River possessed no assets of its own, therefore, Ms. Peyton and Mr. Myers had to make personal guarantees to repay plaintiff in order for it to give Rocky River a line of credit.

of "all amounts purchased or now owing" (1) by both of them—"us" *or* either of them—"either of us", *or* (2) by any other entity that purchases or owes such amounts for Myers/Peyton's benefit—"any other person, firm or corporation for our benefit".

In further support of my contention that this contract provides for an unconditional promise of payments, the contract provides:

> *If* credit is extended to a corporation in which we, or I am an officer, or in which an interest exists I and/or we will *personally faithfully guarantee* the payment of all credit extended to said corporation.

(Emphasis added). I read this sentence to mean that Mr. Myers and/or Ms. Peyton *also* agreed to guarantee amounts owed by a corporation in which either is an officer or has an interest in.

In sum, because Ms. Peyton and Mr. Myers made an unconditional promise to repay plaintiff for any credit which it extended, I believe that the trial court correctly found that Rocky River, Ms. Peyton and Mr. Myers were jointly and severally liable to plaintiff. I, therefore, vote to affirm that part of the trial judge's ruling.

I, however, find error regarding another issue presented in this case which is not reached by the majority regarding the payment of late charges. Plaintiff concedes that the trial judge erred in awarding late charges at an interest rate of 18% because the contract did not provide an interest rate in the event of default. Therefore, this matter should be remanded to the trial court to modify his judgment and award interest at the legal rate. For the foregoing reasons, I respectfully dissent.