IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-324

Filed 16 January 2024

Wake County, No. 21 CVD 4525

SMITH DEBNAM NARRON DRAKE SAINTSING & MYERS, LLP, Plaintiff,

v.

PAUL MUNTJAN, Defendant.

Appeal by Defendant from judgment entered 3 November 2022 by Judge Ned W. Mangum in Wake County District Court. Heard in the Court of Appeals 1 November 2023.

> *Smith Debnam Narron Drake Saintsing & Myers, LLP, by Byron L. Saintsing & Joseph Alan Davies, for Plaintiff-Appellee.*
>
> *Law Office of Mark L. Hayes, by Mark L. Hayes, for Defendant-Appellant.*

CARPENTER, Judge.

Paul Muntjan ("Defendant") appeals from the trial court's judgment, awarding money damages from Defendant to Smith Debnam Narron Drake Saintsing & Myers, LLP ("Plaintiff"). Defendant argues the judgment is unsupported by a legal theory. Specifically, Defendant argues the judgment is unsupported by breach of contract or quantum meruit. After careful review, we agree with Defendant and reverse the trial court's judgment.

## I. Factual & Procedural Background

This case concerns a contract dispute involving three parties: a construction-

business owner, the business owner's father, and a law firm. Nick Muntjan is the business owner, Defendant is Nick's father, and Plaintiff is the law firm. In sum, Plaintiff performed legal services for Nick, and Plaintiff eventually sued Defendant to collect fees for its services.

On 16 August 2019, Nick initially met with Brian Saintsing, a partner at Plaintiff. Defendant accompanied Nick to the meeting. At the meeting, the parties did not discuss the cost of Plaintiff's services. Saintsing, however, testified that Defendant promised to pay for Plaintiff's services. Specifically, Saintsing testified as follows: "Paul, the father, volunteered that he would be responsible for the fees in addition to his son because his son was experiencing financial difficulty and did not have the wherewithal to pay for a defense of any litigation that might be brought."

Defendant denied saying this. More specifically, Defendant denied "promis[ing] at that meeting with Mr. Saintsing that [he] would pay [his] son's legal bills." Despite the disputed substance of the discussion, the purpose of the meeting was clear: Nick needed legal representation, and he sought Plaintiff's help.

On 17 September 2019, Plaintiff mailed and emailed Nick an engagement letter, which stated that "[u]pon receipt of the signature page and the retainer, we will begin work in this matter." The engagement letter listed Plaintiff's hourly rate and how Nick would be billed. Nick and Defendant both testified, however, that they never received the letter.

Some of Nick's former clients eventually sued him on 9 December 2019, and

Defendant forwarded the complaint to Plaintiff on 18 December 2019. Despite not receiving a signed engagement letter, Plaintiff began working for and billing Nick. And Plaintiff received payments toward Nick's balance, but those payments were made through Defendant's credit card. Defendant and Nick testified that Defendant did not make the payments; he merely allowed Nick to use his credit card as a loan. These payments are reflected in Plaintiff's invoices, which also detail Plaintiff's hourly rate, time worked, and total charges.

On 12 May 2020, Plaintiff emailed Nick, stating that portions of his bill were past due. On 4 June 2020, Plaintiff again emailed Nick about his overdue bill. On 6 June 2020, Nick responded and asked Plaintiff to "CC" Defendant on future correspondence. Correspondence between Plaintiff and Defendant included the following, all via email. Defendant: stated that it "was important to us to always pay our valued partners quickly for their services"; sent Plaintiff the complaint filed against Nick and asked how "we can best work together in this regard"; questioned whether a payment was missing from an invoice; and asked if discovery could be limited in order to keep costs down. Defendant ended each of these emails with either "Paul" or "Paul Muntjan."

On 31 March 2021, Plaintiff attempted to collect its past-due bills by suing Defendant, rather than Nick. On 3 November 2022, after a bench trial, the trial court entered a $13,528.06 judgment against Defendant. The trial court concluded that Defendant breached an "original promise" to Plaintiff. In other words, the trial court

concluded that Defendant breached a contract with Plaintiff, and the contract need not be written to be enforceable. Defendant timely filed notice of appeal on 23 November 2022.

## II.    Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat.§ 7A-27(b)(2) (2021).

## III.    Issue

The issue on appeal is whether the trial court erred in holding Defendant liable to Plaintiff for services provided for Defendant's son. The two underlying issues concerning the propriety of the trial court's judgment are whether Plaintiff has a valid claim for (1) breach of contract or (2) quantum meruit.

## IV.    Standard of Review

We review a trial court's conclusions of law de novo. *Luna ex rel. Johnson v. Div. of Soc. Servs.*, 162 N.C. App. 1, 4, 589 S.E.2d 917, 919 (2004). Under a de novo review, "'the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

## V.    Analysis

### A. Breach of Contract & the Statute of Frauds

Defendant argues the trial court erred because he and Plaintiff never formed a valid contract, and even if they did, the contract was unenforceable under the

statute of frauds. Rather than analyzing contract formation, we will begin with Plaintiff's second argument. We will assume, without deciding, that the parties formed a valid contract, and we will discern whether the contract satisfies the statute of frauds. After careful review, we conclude that even if the parties formed a valid contract, it is unenforceable because it fails the statute of frauds.

A "statute of frauds" requires certain contracts be written and signed to be enforceable. *See Durham Consol. Land & Improv. Co. v. Guthrie*, 116 N.C. 381, 384, 21 S.E. 952, 953 (1895) (explaining that the statute of frauds requires "that the contract shall be in writing and signed by 'the party to be charged therewith'"). North Carolina's statute of frauds is codified in Chapter 22 of our General Statutes. *See* N.C. Gen. Stat §§ 22-1 to -5 (2021). Section 22-1 states:

> No action shall be brought . . . to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized.

*Id*. § 22-1.

In other words, an enforceable contract to pay another's debt must be in writing and be signed by the party charged. *Id.* A contract to pay another's debt is a "guaranty," and the "guarantor" is the party who promises to pay. *See Foote & Davies, Inc. v. Arnold Craven, Inc.*, 72 N.C. App. 591, 593–94, 324 S.E.2d 889, 891–92 (1985).

**1. Collateral Promise or Original Promise: Whether Defendant's Promise**

**Was a Guaranty**

A "collateral promise" is a guaranty, but an "original promise" is not. *See Burlington Indus., Inc. v. Foil*, 284 N.C. 740, 754, 202 S.E.2d 591, 601 (1974). Our courts have distinguished the two categories this way: If "credit was extended directly and exclusively to the promisor, then the promise is considered original and not within the statute of frauds." *Id.* at 754, 202 S.E.2d at 601. But if any credit was extended to a party other than the promisor, the promise is collateral and within the statute of frauds. *Id.* at 754, 202 S.E.2d at 601. Put another way, if only the promisor is liable for the promise, the promise is original; but if another party is also liable for the promise, the promise is collateral. *See id.* at 754, 202 S.E.2d at 601.

Here, Saintsing stated that Defendant "volunteered that he would be responsible for the fees in addition to his son because his son was experiencing financial difficulty and did not have the wherewithal to pay for a defense of any litigation that might be brought." Defendant did not simply promise to pay; he promised to pay in addition to Nick. So a party other than Defendant—Nick—was also liable under the contract. *See id.* at 754, 202 S.E.2d at 601. Therefore, the contract was a guaranty, and the trial court erred when it concluded that Defendant made an "original promise." *See id.* at 754, 202 S.E.2d at 601.

**2. The Main Purpose Rule**

A guaranty, however, may still avoid the statute of frauds if the main-purpose rule applies. *Id.* at 748, 202 S.E.2d at 597. The main-purpose rule applies to a

guaranty if its main purpose is to benefit the guarantor. *Id.* at 748, 202 S.E.2d at 597. But a parent–child relationship, without more, does not trigger the main-purpose rule. *See Ebb Corp. v. Glidden*, 322 N.C. 110, 110, 366 S.E.2d 440, 441 (1988) (adopting the dissenting opinion from this Court as its own); *Ebb Corp. v. Glidden*, 87 N.C. App. 366, 373, 360 S.E.2d 808, 811 (1987) (Becton, J., dissenting) ("[T]he parent-child relationship is not sufficient in and of itself to take an oral promise by a parent to pay a child's debts outside the Statute of Frauds by applying the main purpose doctrine.").

Here, Defendant promised to pay Nick's debt, and Nick is Defendant's son. No other evidence suggests that the main purpose of the guaranty was to benefit Defendant, so the main-purpose rule does not apply, and the statute of frauds does. Therefore, the trial court erred when it concluded Defendant's promise need not be written to be enforceable. *See Ebb Corp.*, 322 N.C. at 110, 366 S.E.2d at 441.

**3. Signed "Memorandum or Note Thereof"**

Having concluded that the statute of frauds applies to the contract, we must now discern whether any correspondence between Plaintiff and Defendant is a signed "memorandum" of the contract. *See* N.C. Gen. Stat § 22-1.

"In order to constitute an enforceable contract within the statute of frauds, the written memorandum, though it may be informal, must be sufficiently definite to show the essential elements of a valid contract." *Smith v. Joyce*, 214 N.C. 602, 604, 200 S.E. 431, 433 (1939). Price, parties, and the goods or services to be exchanged

are essential elements of a contract. *Connor v. Harless*, 176 N.C. App. 402, 405, 626 S.E.2d 755, 757 (2006).

A written correspondence may satisfy the statute of frauds if it "sufficiently refer[s] to some writing in which the terms are set out and which itself contains all the requisites of a valid contract or memorandum under the statute." *Winders v. Hill*, 144 N.C. 614, 618–19, 57 S.E. 456, 457 (1907).[1] When looking for sufficient written memoranda, "separate writings may be considered together to satisfy the statute of frauds requirement." *Crocker v. Delta Grp., Inc.*, 125 N.C. App. 583, 586, 481 S.E.2d 694, 696 (1997). And concerning the requisite signature, email signatures generally suffice. *See Powell v. City of Newton*, 200 N.C. App. 342, 348, 684 S.E.2d 55, 60 (2009) (citing N.C. Gen. Stat. §§ 66-312(9), -315(b)).

Here, all emails sent by Defendant end with his name, which satisfies the signature requirement. *See id.* at 348, 684 S.E.2d at 60. The question is whether the substance of Defendant's emails contains "the essential elements of a valid contract." *See Smith*, 214 N.C. at 604, 200 S.E. at 433. The text of Defendant's emails lacks the price of Plaintiff's services, so the text of Defendant's emails lacks an essential element. *See Connor*, 176 N.C. App. at 405, 626 S.E.2d at 757.

But Defendant's emails may still satisfy the statute of frauds if they refer to a

---

[1] The Dissent notes that *Winders* is a 116-year-old case, implying that its age dilutes its precedential value. To the contrary, unless overruled, we think a case's precedential value increases with the passage of time. *See, e.g., Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1803).

memorandum that includes the essential contract elements. *See Winders*, 144 N.C. at 618–19, 57 S.E. at 457. Here, several of Defendant's emails explicitly refer to Plaintiff's invoices. The invoices provide the price and provided-service terms of the contract because they include the services provided by Plaintiff and the price of the services. *See Connor*, 176 N.C. App. at 405, 626 S.E.2d at 757.

Because this dispute involves a guaranty, however, the invoices must show that Defendant promised to pay. Here, the invoices only refer to "Nick" as the customer, not Defendant. Nor do the invoices state any promise by Defendant to pay Nick's invoices. Therefore, the invoices lack an essential term of the guaranty—the alleged paying party, Defendant. *See id*. at 405, 626 S.E.2d at 757.

One of Defendant's emails, though, bears repeating in full. Defendant sent the following email to Plaintiff and signed it as "Paul Muntjan":

> Received your email as addressed to son Nick regarding the case and request for prompt payment. It is important to us to always pay our valued partners quickly for their services rendered[,] so rest assured your invoice will be turned around immediately and a check sent upon receipt. Please note as of this date no invoice has been received. As a reminder, please [e]nsure any and all invoices are sent to my email due to my travel schedule.

The question is whether this email, coupled with other emails and invoices, is enough to "show the essential elements of" the guaranty. *See Smith*, 214 N.C. at 604, 200 S.E. at 433. Defendant spoke in passive, vague terms. Defendant said Plaintiff's invoice "will be turned around immediately," but he did not promise that he,

personally, would pay. Defendant said that "no invoice has been received," but he did not say that he, personally, was expecting the invoice.

Taken as a whole, Defendant's emails imply that he agreed to pay for Nick's legal bills, and indeed the trial court found that Defendant verbally promised to do so. But while spoken words and implications can form a contract, *see Snyder v. Freeman*, 300 N.C. 204, 217, 266 S.E.2d 593, 602 (1980), they cannot satisfy the statute of frauds, *see Winders*, 144 N.C. at 618–19, 57 S.E. at 457.[2] Defendant's emails are not "sufficiently definite to show the essential elements of a valid contract" because they do not express a clear, written promise by Defendant that *he* would pay Plaintiff. *See Smith*, 214 N.C. at 604, 200 S.E. at 433. Therefore, Defendant's guaranty is not enforceable, and the trial court erred by concluding otherwise.

In sum, we conclude that because the guaranty between Plaintiff and Defendant is not memorialized and signed by Defendant, it is not enforceable against Defendant. *See* N.C. Gen. Stat § 22-1.

## B. Quantum Meruit

Lastly, we must discern whether the trial court's judgment was supported by quantum meruit, "an equitable principle" that allows recovery without an enforceable

---

[2] Contrary to the Dissent's position, we are not "attempt[ing] to engender a new rule." In our view, the statute of frauds indeed stands athwart to spoken words and implications. *See* N.C. Gen. Stat §§ 22-1 to -5. We concede that this is a close case, but the statute of frauds is not a high bar. All Plaintiff needed from Defendant was a signed writing saying, for example, "I promise to pay Nick's debt." Defendant's writings certainly imply that he would pay Nick's debt, but his writings do not say so.

contract. *See Paxton v. O.P.F., Inc.*, 64 N.C. App. 130, 132, 306 S.E.2d 527, 529 (1983). We conclude it was not.

Quantum meruit is Latin for "as much as he has deserved." *Quantum Meruit*, BLACK'S LAW DICTIONARY (11th ed. 2019). Quantum meruit requires "plaintiff [to] show: (1) services were rendered to defendants; (2) the services were knowingly and voluntarily accepted; and (3) the services were not given gratuitously." *Envtl. Landscape Design Specialists v. Shields*, 75 N.C. App. 304, 306, 330 S.E.2d 627, 628 (1985).

In order to recover under quantum meruit, however, a benefit must pass from the plaintiff to the defendant. *Fagen's of N.C., Inc. v. Rocky River Real Est. Co.*, 117 N.C. App. 529, 533, 451 S.E.2d 872, 874–75 (1995). In *Fagen's*, the defendant served as a guarantor concerning the plaintiff's loan to a third-party borrower, an entity which the defendant did not own or operate. *Fagen's*, 117 N.C. App. at 532, 451 S.E.2d at 874. The plaintiff asserted the defendant was liable under quantum meruit, but this Court held that quantum meruit was "without support, because that theory would also require some benefit passing to [the defendant] upon the extension of credit to [the third-party borrower]." *Id.* at 533, 451 S.E.2d at 874–75.

So too here. The benefit of Plaintiff's legal services passed from Plaintiff to Nick, not to Defendant. Although Plaintiff mistakenly believed he was, Defendant is not an owner of Nick's company, and Plaintiff's services were rendered to Nick and

his company—not Defendant. Therefore, Plaintiff cannot recover from Defendant under quantum meruit. *See id.* at 533, 451 S.E.2d at 874–75.

## VI. Conclusion

We conclude the trial court erred by entering judgment against Defendant. The judgment is not supported by contract theory or quantum meruit; therefore, we reverse.

REVERSED.

Judge FLOOD concurs.

Judge ARROWOOD dissents in a separate opinion.

ARROWOOD, Judge, dissenting.

I respectfully dissent from the majority's holding that the trial court erred by entering judgment against defendant because, in my opinion, defendant's emails satisfied the statute of frauds.

Section 22-1 of the North Carolina General Statutes codifies the statute of frauds requirement that a contract to pay a third-party's debt "be in writing, and signed by the party charged[.]" N.C.G.S. § 22-1 (2023). Such requirement "was designed to guard against fraudulent claims supported by perjured testimony; it was not meant to be used by defendants to evade an obligation[.]" *House v. Stokes*, 66 N.C. App. 636, 641, *cert. denied*, 311 N.C. 755 (1984).

" 'In order to constitute an enforceable contract within the statute of frauds, the written memorandum, though it may be informal, must be sufficiently definite to show the essential elements of a valid contract.' " *Carr v. Good Shepherd Home, Inc.*, 269 N.C. 241, 243 (1967) (quoting *Smith v. Joyce*, 214 N.C. 602 (1939)). Essential elements of a valid contract include the parties, price, and subject-matter of the contract. *Hurdle v. White*, 34 N.C. App. 644, 648 (1977).

Further, "[a] memorandum, by its very nature, is an informal instrument, and the statute of frauds does not require that it be in any particular form." *Hurdle v. White*, 34 N.C. App. 644, 648 (1977). Even "separate writings may be considered together to satisfy the statute of frauds requirement." *Crocker v. Delta Grp., Inc.*, 125 N.C. App. 583, 586 (1997).

The majority contends that defendant's emails do not satisfy the statute of frauds because "they do not express a clear, written promise by [d]efendant that he would pay [p]laintiff." Yet, to satisfy the requirement, the emails only need to be "sufficiently definite to show the essential elements of a valid contract." *Carr*, 269 N.C. at 243. And when "considered together[,]" defendant's emails undoubtedly do that. *See Crocker*, 125 N.C. App. at 586.

As the majority states, the essential elements of the parties, price, and signature were met, leaving only the element of defendant's promise to pay in question. Here, defendant's September 2019 email states that "it is important to *us* to always pay *our* valued partners quickly for their services rendered so rest assured your invoice will be turned around immediately and a check sent upon receipt." (emphasis added). The same email also accounts for payment of "any and all [future] invoices" by asking that such invoices be sent directly to defendant's personal email address. I think this sufficiently shows in writing defendant's promise to pay.

Defendant further memorializes his agreement to pay plaintiff for legal services in five emails sent by defendant between December 2019 and July 2020. Specifically, defendant's 19 December 2019 email specifically refers to subject-matter of the contract by attaching the filed complaint against defendant's son and requesting plaintiff's legal review of it. The four subsequent emails—sent directly from defendant in June and July 2020—refer to various invoices and questions about

2

payments for legal services, including defendant's clear acknowledgement that he would need to "deal with" a $3,000.00 payment for plaintiff's work "answering the discovery served upon" defendant's son. Thus, when considered together, defendant's emails constitute a signed memorialization of the guaranty between plaintiff and defendant and satisfy the requirements of § 22-1 and our precedents.

To support the contention that these emails somehow miss the mark of satisfying the statute of frauds, the majority cites *Winders v. Hill*, 144 N.C. 614, a 116-year-old case that—until this filing—has not been mentioned for sixty-nine years. *See Clapp v. Clapp*, 241 N.C. 281, 283–84 (1954) (citing *Winders* to support the rule that "it is settled law that a party may rely on the statute of frauds under a general denial."); *see also Weant v. McCanless*, 235 N.C. 384, 386 (1952) ("[T]he contract, as alleged, may be denied and the statute pleaded, and in such case if it 'develops on the trial that the contract is in parol, it must be declared invalid'.").

In *Winders*, our Supreme Court explained that the writings did not satisfy the statute of frauds because they were insufficient to constitute an admission of the contract in that they did not "contain internal evidence of the contract or refer to some that writing that does." 144 N.C. at 618 (citations omitted). Our Supreme Court reaffirmed the rule set forth in *Winders* that in a breach of contract case, the plaintiff "must establish the contract by legal evidence, and if it is required by the statute to be in writing, then by the writing itself, for that is the only admissible proof"

3

*Jamerson v. Logan*, 228 N.C. 540, 543 (1948) (citing *Winders*, 144 N.C. at 617).

Yet, even in light of *Winders*, the majority's argument fails. In the case *sub judice*, unlike in *Winders*, we have multiple emails from defendant that not only "contain internal evidence of the [guaranty]" but as discussed above, are sufficiently definite to show the contract's essential elements. *See Winders*, 144 N.C. at 618. The emails may also be considered "legal evidence" and taken together constitute "the writing itself" and accordingly are "admissible proof" of the contract. *Jamerson*, 228 N.C. at 543.

The majority also attempts to engender a new rule from *Winders* that written "implications" cannot support satisfying the statute of frauds. I cannot agree with such proposition, however, as neither *Winders* nor N.C.G.S. §§ 22-1 through 22-5 states this. In fact, § 22-1 simply requires that "*some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized.*" (emphasis added). More importantly, I believe that defendant's emails, which the majority states "imply that he agreed to pay for Nick's legal bills," go further than mere implication, and instead "contain internal evidence of the contract" and satisfy the statute of frauds. As the majority acknowledges, the statute of frauds "is not a high bar," and in my view the evidence here easily clears.

4

For the foregoing reasons, I would affirm the trial court's judgment. Therefore, I dissent.